Commonwealth *v.* Lafferty, Appellant.

542

[redacted]

Argued May 25, 1967. Before BELL, C. J., MUS-MANNO, EAGEN, O'BRIEN and ROBERTS, JJ.

Richard C. Fox, with him Martin Goodman, and Goodman & Notopoulos, and McNees, Wallace & Nurick, for appellants.

Edward T. Baker, Deputy Attorney General, with him William C. Sennett, Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, September 26, 1967:

The appellants, Fred B. Lafferty, J. D. Lafferty and Charles W. Albright, Jr., partners, d/b/a Lafferty Trucking Company (Lafferty), by this appeal challenge

the correctness of the judgment entered below following dismissal of their appeal from a decision of the Commonwealth's Board of Finance and Revenue sustaining an assessment for a use tax deficiency.

The sole question for decision is whether a contract carrier (Lafferty), which is not a public utility, but which renders a service identical to that rendered by a common carrier, which is a public utility, is entitled to the exclusion from taxation afforded to those engaged in a "public utility service" within the meaning of §§2(j)(7)(c) and 2(n)(4)(c)(iii)[1] of the Selective Sales and Use Tax Act.[2]

Lafferty contends it is entitled to the exclusion. The facts were stipulated below. Lafferty conducts a business of contract carrier by motor vehicle in both interstate and intrastate commerce under rights granted to it by the Interstate Commerce Commission and Pennsylvania Public Utility Commission. Lafferty serves only one customer, a retail food chain (A. & P.) for which it transports goods and merchandise.

The first argument advanced by Lafferty is that the definitional exclusion for "public utility service" facilities, supra, is not limited by the definition of "public utility" in the Public Utility Code,[3] so that one

---

[1] The act involved imposes a tax upon the use within the Commonwealth of tangible personal property purchased at retail. It defines "use" and then further provides in §2(n)(4)(c)(iii) that the term "use" shall not include "The use or consumption of tangible personal property . . . directly in any of the operations. . . . The producing, delivering or rendering of a public utility service. . . ." An identical exclusion from an otherwise taxable sale at retail is contained in §2(j)(7)(c).

[2] Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 P.S. §3403.1 et seq. The 1963 amendments changed the title of the act to the "Tax Act of 1963 for Education." Act of May 29, 1963, P. L. 49, §2, 72 P.S. §3403.1.

[3] Act of May 28, 1937, P. L. 1053, as amended, 66 P.S. §1101 et seq. §1102(17)(c) thereof includes common carriers within the

need not be a "public utility" in order for one's services to be excluded. However, it admits the term "service" is defined by reference to the Public Utility Code. This rather ingenious argument rests on two fairly recent decisions of this Court: *Commonwealth v. McHugh*, 406 Pa. 566, 178 A. 2d 556 (1962), and *Commonwealth v. Equitable Gas Company*, 415 Pa. 113, 202 A. 2d 11 (1964).

In *McHugh*, a construction contractor sought the public utility exclusion on its purchase of materials and supplies used in the erection of a facility for the municipal water department of the City of Philadelphia. The issue in *McHugh* was whether the exclusion, admittedly applicable to the repairing and renovation of existing public utility facilities, also extended to purchases utilized in the erection of new facilities. We held the exclusion did so extend.

In the *Equitable Gas Company* case, the question was whether or not tangible property of two public utilities was used directly in rendering a "service," so as to qualify for the public utility service exclusion. We held that, in determining whether or not an "excluded" service was being rendered by a public utility, one must refer to the definition of "service" in the Public Utility Code.[4]

Lafferty uses these two decisions to construct a syllogism which would enable it to claim the public utility service use tax exclusion, even though it is not a "public utility" as that term is defined by the Public Utility Code.[5] The premises involved in this syllogism are as follows: (1) The *Equitable Gas Company* case, supra, held "service", as defined by the

definitional framework of a "public utility." §1102(5) excludes contract carriers, such as Lafferty, from the definition of "common carrier."

[4] 66 P.S. §1102(20).

[5] 66 P.S. §1102(17).

Public Utility Code, to control in the meaning of that word as contained in the exclusion in question. The code definition of "service" includes transportation by contract carrier. (2) The *McHugh* case, supra, held the exclusion applied in the case of materials purchased for the construction of new facilities for the Philadelphia Water Department. Lafferty points out that the Philadelphia Water Department is not a "public utility" as that term is defined in the Public Utility Code because it is municipally operated.[6]

Therefore, claims Lafferty, "public utility service" as used in the exclusion cannot mean "service rendered by a public utility." Rather, it actually means something like "service similar to that which a public utility renders." "Service" is defined by reference to the Public Utility Code (*Equitable Gas Company*, supra) under which definition Lafferty qualifies. "Public utility" would not be defined by reference to the Public Utility Code, of course, because the *McHugh* case, supra, granted the exclusion to an entity not qualifying as a Public Utility Code "public utility." The "public utility" facet of the exclusionary phrasing is claimed to be a general modifier only, inserted to limit the provision to any entity which performs services identical to those rendered by genuine, bona fide public utilities. Presumably, "public utility" would also be needed to direct anyone reading the statute to the Public Utility Code definition of "services". Since Lafferty performs services which can be equated with

---

[6] "Public Utility" is partially defined in §2(17) of the Public Utility Code (66 P.S. §1102(17)) as ". . . [P]ersons or corporations now or hereafter owning or operating in this Commonwealth equipment, or facilities for: . . . ."

"Corporation" is in turn defined, so far as is germane, as: ". . . [A]ll bodies corporate . . ., *but shall not include municipal corporations.* . . ." (Emphasis throughout added.) §2(9) of the Public Utility Code (66 P.S. §1102(9)).

those of a genuine public utility, i.e., a common carrier, it asserts that it is encompassed within the ambit of the exclusionary clause.

While we admire both the ingenuity and the originality of this argument, we do not accept it. Under close analysis, the premises upon which it depends break down on several counts.

The *McHugh* decision reasoning by Lafferty is based on the assumption that this Court in *McHugh* recognized and proceeded on the ground that the Philadelphia Water Department was not a Public Utility Code "public utility". In fact, we made no such assumption. The only issue raised before us in that case was whether the tax exclusion applied to the construction of new facilities, as well as to the improvement of existing facilities. It was assumed, or tacitly conceded, in every one of the six briefs[7] filed by the various parties and amici curiae in that case, as well as by this Court speaking through the present writer, that the Philadelphia Water Department was a bona fide public utility. This "given" was an integral part of the *McHugh* decision. The correctness of this concession by the Court and the Commonwealth, as well as the other parties, is presently irrelevant.

Turning now to the *Equitable Gas Company* branch of Lafferty's argument, we see that in that case the taxpayers were admittedly genuine public utilities. The sole question was whether or not certain tangible property (meters) was used by the admitted public utilities in rendering a "service." The whole emphasis of our opinion in *Equitable Gas Company* was

---

[7] Briefs were submitted by Commonwealth of Pennsylvania (appellee) ; Charles A. McHugh (appellant) ; City of Philadelphia (intervenor-appellant) ; Pa. Electric Association, Pa. Gas Association, and Pa. Natural Gas Men's Association (amici curiae) ; The Penna. Water Companies of the Eastern Water Conference (amici curiae) ; Bell Telephone Co. of Pa. (amicus curiae).

devoted to the question of whether or not the use of meters by a public utility constituted the rendering of a "service" by that public utility.

A careful reading of *Equitable Gas Company* clearly manifests that we proceeded to an analysis of the "service" question only after an initial determination that the entities involved were genuine public utilities. In applying the "public utility service" exclusion, the "public utility" question should be decided before reaching the "service" question. An entity must be a "public utility" under the Public Utility Code to qualify for the sales and use tax public utility service exclusion. This threshold determination was made in *Equitable Gas Company* and is the bedrock upon which that opinion rests.[8]

It is our view, therefore, that the reading given to the *Equitable Gas Company* case, as well as to the *McHugh* case, by Lafferty is incomplete, and cannot serve to support the argument based thereon, that contract carriers qualify for the public service sales and use tax exclusion.

We feel then that the statutory exclusion in question was meant by the Legislature to apply only to Public Utility Code "public utilities" when they render Public Utility Code "services."[9]

---

[8] At the outset of the opinion, Mr. Justice Roberts states: "Both appellants are Pennsylvania public utilities . . . Both taxpayers operate under the provisions of the Pennsylvania Public Utility Law, subject to the jurisdiction of the Public Utility Commission and in accordance with tariffs filed with the Commission." (Footnote omitted.) *Commonwealth v. Equitable Gas Co.*, 415 Pa. 113, 114-115, 202 A. 2d 11, 12, 13 (1964). It is only after this determination that the Court initiates its discussion of the "service" question.

[9] Of course, the exclusion also applies in a *McHugh* situation or its counterpart. That is to say, if a potential taxpayer is involved in purchases or uses which are for the direct benefit of a

Lafferty next argues that the purpose of the exclusion is to prevent "tax pyramiding," i.e., to insure that the sales and use tax is paid only once in the sequence from creation of the commodity or service to the consumer, to prevent a tax on a tax situation. Thus, Lafferty says that contract carriers are as much within the scope of such a purpose as common carriers. While we tend to agree with Lafferty that obviation of "tax pyramiding" is indeed the purpose of the instant exclusion, we cannot agree that contract carriers therefore qualify thereunder. Our prior determination interpreting the exclusion in question as being unavailable to entities not qualifying as "public utilities" under the Public Utility Code disposes of this argument. The Legislature may well have intended to block "tax pyramiding", but it likewise intended to bar contract carriers from the instant exclusion. Apparently, the Legislature felt that the effects of such "pyramiding" insofar as contract carriers are involved were not of such gravity to warrant the exclusion, perhaps since the scope of contract carrier service, by definition, is limited. The "purpose" argument was made to bolster the syllogistic argument and when the latter fell, the former becomes, in effect, moot.

---

public utility, to be used by that public utility in an excluded service, then the potential taxpayer might be likewise excluded from the sales and use tax. It should be evident that the rationale of *McHugh* is in no way limited to the strict facts of that case, i.e., to construction contractors only. Furthermore, the exclusion might also be available in the case of an entity long considered *by the courts* to be a public utility rendering what have been judicially declared to be public utility services though such entity does not come within the Public Utility Code. For language supportive of this assertion, see *Commonwealth v. Equitable Gas Company*, 415 Pa. 113, 116-117, 202 A. 2d 11 (1964). Cf. *Com. v. Merritt-Chapman & Scott Corp.*, 3 CCH, Pa. Tax Reporter ¶ 200-711 (July 25, 1967) (C.P. Dauphin County).

The final argument advanced by Lafferty contends that Regulation 227[10] (which glosses the exclusion in question) is an incorrect and unconstitutional interpretation of the exclusion, because it specifically states that such is only open to Public Utility Code "public utilities", thereby distinguishing between contract carriers and Class D common carriers. Lafferty contends that there is no difference or, at least, not enough difference between the two types of carriers to constitutionally sustain differing tax treatment.[11]

Lafferty's argument is actually directed against the Regulation. But in view of the fact that we have today held that the essential meaning of the exclusion is accurately reflected by the Regulation, it would now be judicially unrealistic to separate a constitutional attack on the Regulation from such an attack on the statutory provision itself.

The question then becomes: Are contract carriers and Class D common carriers the "same class of subjects"? If it is reasonable to separately classify them for sales tax purposes, they are not.

The actual distinction made in the exclusion is between public utilities and entities which are not public utilities. It is to this broad classification that we must look in determining the reasonableness, and hence the constitutionality, of any exclusionary differentiation. If that is proper, then the exclusion of Class D com-

---

[10] Reg. 227 Pennsylvania Bureau of Sales and Use Tax, 2 CCH, Pa. Tax Reporter ¶ 60-221.

[11] We assume this argument rests on Art. IX §1 of the Pennsylvania Constitution which states, in pertinent part: "All taxes shall be uniform, *upon the same class of subjects*, within the territorial limits of the authority levying the tax. . . ." (Emphasis supplied.)

No constitutional provision whatsoever was cited by Lafferty in its brief, nor by the Commonwealth, both parties apparently content to grapple with the blanket assertion of "unconstitutionality."

mon carriers is necessarily valid, such exclusion then being incidental to the larger distinction.[12] The distinctions between a public utility and a business entity which is not a public utility are well known. For example, a public utility holds itself out to the public generally and may not refuse any legitimate demand for service, while a private business independently determines whom it will serve. 43 Am. Jur. Public Utilities and Services, §2 (1942); 73 C.J.S. Public Utilities §1 (1951). If the purpose of the exclusion indeed is to prohibit tax pyramiding, it is reasonable for the Legislature, steering a course between the need for revenue and consideration for the consumer, to deem public utility customers the most appropriate beneficiaries of the exclusionary safeguard.

Further, it is in the context of the whole Sales and Use Tax statute that we must view the exclusion. Since this statute is one designed to raise revenue, the state need not justify any distinction drawn between the taxed and the nontaxed "so long as some other reasonable basis for treating the various classes differently exists. Where such distinction exists, the wisdom of the legislative policy of taxing one class and not another is not a matter for the courts." *Commonwealth v. Life Assurance Co. of Pa.,* 419 Pa. 370, 377 n. 11, 214 A. 2d 209, 215 n. 11 (1965). As stated in *Commonwealth v. Life Assurance Co. of Pa.,* Id. at 376-377, 214 A. 2d at 214: "By necessity a wide discretion must be conceded to the Legislature in the classification of various businesses or occupations for purposes of taxation. . . .

"The only constitutional limitation placed upon the power of the Legislature to distinguish between various

[12] While there seems to be little or no actual difference in the external operation of contract carriers and Class D common carriers, the fact remains that one is legislatively defined as a public utility and the other is not.

entities for purposes of taxation is that their basis for doing so be reasonable. . . . And the burden of showing that the classification employed by the Legislature is not reasonable is upon the party attacking the tax." (Citations omitted.)

Since we are dealing here with two different classes, public utilities and nonpublic utilities, which are reasonably differentiated, the exclusion clause does not conflict with the uniformity clause (Art. IX §1) of the Pennsylvania Constitution.[13] The fact that some Class D common carriers look very much like contract carriers in terms of their external operations is thus accidental to the larger legislative design. Cf. *Philadelphia Association of Linen Suppliers v. Philadelphia,* 139 Pa. Superior Ct. 560, 567, 12 A. 2d 789, 792 (1940).

Judgment affirmed.

Mr. Justice JONES and Mr. Justice COHEN took no part in the consideration or decision of this case.

---

[13] This determination automatically forecloses any federal constitutional argument based on the equal protection clause of the United States Constitution since both clauses stand in pari materia insofar as the instant issue is concerned. *Commonwealth v. Life Assurance Co. of Pa.* 419 Pa. 370, 374 n. 8, 214 A. 2d 209, 213 n. 8 (1965) ; *Commonwealth v. Budd Co.,* 379 Pa. 159, 167, 108 A. 2d 563, 566 (1954).