J. L. Turner Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Argued December 4, 1978, before Judges CRUMLISH, JR., BLATT and CRAIG, sitting as a panel of three.

*Thomas L. Wenger,* with him *Wix, Wenger & Weidner,* for appellant.

*Paul S. Roeder,* Deputy Attorney General, for appellee.

OPINION BY JUDGE BLATT, March 9, 1979:

The J. L. Turner Company (petitioner) has appealed to this Court from a decision of the Board of

Finance and Revenue (Board) assessing it $12,467.44 plus "appropriate interest" for use taxes incurred during the period between January 1, 1969 and March 31, 1972. A hearing de novo was held before this Court on April 10, 1978, at which counsel for the petitioner and the Board submitted exhibits, testimony and several stipulated facts which form the record for this appeal.

The stipulated facts are as follows:

### STIPULATED FACTS

1. The petitioner is J. L. Turner Company, a Pennsylvania corporation having its principal place of business at Keith Street, Wilkes-Barre, Luzerne County, Pennsylvania 18702.

2. The petitioner is engaged in business as a plumbing and heating contractor which sells and installs personal property into machinery and equipment to be used directly by public utilities in the rendering of a public utility service to the public.

3. The Bureau of Sales and Use Tax of the Pennsylvania Department of Revenue performed a sales and use tax audit of the petitioner's business for the period of January 1, 1969 through March 31, 1972, which was performed by the auditor, Andrew S. Kolibob, from April 24, 1972 through August 15, 1972.

4. On September 27, 1973, the Pennsylvania Department of Revenue, Bureau of Taxes for Education, mailed to the petitioner a Notice of a Use Tax Assessment for the period of January 1, 1969 to March 31, 1972.

5. Said assessment was in the following amounts:

| | |
|---|---|
| Use Tax | $12,613.25 |
| Interest | 1,095.59 |
| Penalty | 2,608.80 |
| Total Assessment | $16,317.64 |

6. The petitioner duly filed a Petition for Reassessment with the Department of Revenue, Bureau of Taxes for Education, Board of Review, with respect to said assessment.

7. After the hearing, the Board of Review rendered a Decision and Order, dated and mailed August 20, 1973, sustaining the assessment but abating the penalties imposed by said assessment.

8. The petitioner duly filed with the Board of Finance and Revenue, a Petition for Review of the Decision and Order of the Board of Review.

9. After a hearing on the Petition for Review, the Board of Finance and Revenue rendered an Order, dated February 27, 1974, and mailed March 1, 1974, reassessing the tax imposed as follows:

Use Tax $12,467.44, plus appropriate interest.

10. Being aggrieved by the said Order of the Board of Finance and Revenue, the petitioner appealed to the Commonwealth Court of Pennsylvania by an Appeal dated April 29, 1974.

11. The petitioner on September 27, 1972, was mailed the Notice of Audit Assessment, a copy of which is attached hereto as Exhibit "A" and is made a part hereof and made a part of the Record in this case.

12. The following items are Exhibits, which are true and correct copies and shall be made a part of the record in this case:

(a) Exhibit "B"—Use Tax Work Papers (RTE-343)
(b) Exhibit "C"—Memorandum of September 5, 1972, from Daniel Kelly to Andrew Kolibob
(c) Exhibit "D"—Schedule 1—Disallowed Discount on Use Tax
(d) Exhibit "E"—Petitioner's Sales and Use Tax Returns for the audit period.

Following a review of the testimony and exhibits presented at the April 10, 1978 hearing, this Court makes the following additional findings of fact:

FINDINGS OF FACT

1. A use tax in the amount of $865.55 was assessed against the petitioner for merchandise purchased by it in 1969 and 1970 for use in its construction contract for the installation of an oxygen system at the Nanticoke State Hospital. The merchandise so purchased included an oxygen alarm, regulators, shut-off valves and other miscellaneous "oxygen system" items which were installed on the walls of the hospital rooms and hallways to provide more flexibility in the hospital's previously existing oxygen system which was within the hospital walls.

2. A use tax in the amount of $1,170 was assessed against the petitioner for merchandise purchased by it in 1970, that being component mechanical equipment devices used to treat sewage. This merchandise was sold to the Delaware Valley High School to be installed by another contractor, to allow the school to discharge its waste.

3. A use tax in the amount of $241.08 was assessed against the petitioner for the purchase of piping materials used by it to extend the Hazleton Municipal Sewer to a Catholic high school with such materials extending approximately five feet into the school building when installed.

4. A use tax in the amount of $204.23 was assessed against the petitioner for the purchase in 1970 of tubing from Croft and List, a mechanical contracting company which was going out of business. This tubing was primarily used in connection with the construction contract with the Department of General Services and was installed in the Kingston Armory for water distribution purposes. No documentary proof was sub-

mitted regarding whether or not Croft and List had paid a use tax on this tubing to its vendor.

5. A use tax in the amount of $39.60 was assessed against the petitioner for the purchase of merchandise in 1970 for use in its construction contract for the installation of a water cooling system used by the Metropolitan Wire Co. directly in its manufacturing process of making metal shelves from raw steel.

6. A use tax in the amount of $35.75 was assessed against the petitioner on gas control devices which it purchased and installed in the building of the De Sota Quartite Company, a manufacturer of quartz lamps. These devices were to be used in the manufacturing process by De Sota Quartite.

7. A use tax in the amount of $122.36 was assessed against the petitioner for the purchase of pipes and bends in 1970 used in its contract to install an underground water line at the Wilkes-Barre Housing Authority.

8. A use tax in the amount of $241.50 was assessed against the petitioner for the purchase in 1970 of a unit to supply hot water for baths and hydrotherapy which was installed at the St. Stanislaus Nursing Home operated by the Catholic Church.

9. A use tax in the amount of $129.42 was assessed against the petitioner for its purchase in 1970 of a swimming pool filtration system which it installed at the Wyoming Seminary School in Kingston, Pennsylvania.

10. A use tax in the amount of $43.65 was assessed against the petitioner for its purchase in 1970 of a water treatment system which was a free standing unit not permanently attached to the real estate of the Wyoming Seminary School.

11. A use tax in the amount of $389.89 was assessed against the petitioner for the purchase in 1970 of mer-

chandise consisting of pressure valves, strainer, gauge taxes, filters, circulation pump and vacuum cleaner (sold to the Department of General Services) for use at the swimming pool at Bloomsburg State College.

12. A use tax in the amount of $694.58 was assessed against the petitioner for the purchase in 1971 of condensate pumps installed at the Honesdale Hospital and used in the hospital's sterilizer system.

13. A use tax in the amount of $45.99 was assessed against the petitioner for the purchase in 1971 of pipes and fittings for the extension of the municipal sewage system to the Honesdale Hospital, and installed and incorporated into the realty at the hospital for that utility service.

14. A use tax in the amount of $45.57 was assessed against the petitioner for the purchase in 1970 of a portable fire extinguisher system installed in the kitchen of the Salvation Army in Wilkes-Barre, Pennsylvania.

15. A use tax in the amount of $609.32 was assessed against the petitioner for the purchase in 1971 of a self-contained portable sewage treatment plant installed at the McGregor-Doniger Corporation, to handle the plant waste.

16. A use tax in the amount of $42.48 was assessed against the petitioner for the purchase in 1971 of a pressure sensor and alternating device installed in the oxygen system at the Tyler Memorial Hospital in Tunkhannock, Pennsylvania. These items were devices which allowed the switchboard operator to know the pressure condition of the oxygen system and they were attached to the hospital's oxygen system.

17. A use tax in the amount of $314.28 was assessed against the petitioner for the purchase in 1971 of pumps installed in the fire protection system at the Lewistown Hospital to increase the water pressure be-

cause of an inadequate municipal water pressure system.

18. A use tax in the amount of $1,172.66 was assessed against the petitioner for the purchase in 1971 of a sewage treatment plant installed to provide sewage service to the junior-senior high school of the South Canaan School Authority. The package plant was bolted down to a permanent concrete housing slab, but was otherwise portable and removable and was of the type which is often rented and moved to other locations. This plant was similar to the one installed at McGregor-Doniger.

19. A use tax in the amount of $78.00 was assessed against the petitioner for the purchase in 1971 of an acid drainage tank which was installed by it at Wilkes College for acid drainage from the college's laboratory equipment. The tank was buried underground but was removable.

20. A use tax in the amount of $196.92 was assessed against the petitioner for the purchase in 1971 of a generator installed by it to provide hot water to the Wilkes-Barre Vo-Tech School. The school generated its own electricity on its own premises and needed this generator to provide hot water when the lighting load would cause a decrease in the capacity of certain of the diesel engines which normally generated the electricity.

21. A use tax in the amount of $63.38 was assessed against the petitioner for the purchase in 1971 of a siamese connection for the fire protection system at the Lewistown Hospital which was affixed to the hospital's water system to provide adequate pressure for water within the hospital.

22. A use tax in the amount of $50.39 was assessed against the petitioner for the purchase of merchandise installed by it at the Honesdale Hospital to convert one medical gas supply system to another. These items

consisted of gas outlet-terminal equipment installed on the wall and connected to the existing oxygen system in the wall.

23. A use tax in the amount of $140.58 was assessed against the petitioner for the purchase in 1971 of materials ("copper shims") which were flexible connectors and expansion joints for the Metropolitan Wire Co.'s udylite system, used in its manufacturing process of making metal shelves.

24. A use tax in the amount of $44.40 was assessed against the petitioner for the purchase in 1971 of a condensate pump installed for use in Metropolitan Wire's manufacturing process of making metal shelves.

25. A use tax in the amount of $69.06 was assessed against the petitioner for the purchase in 1971 of a condensate pump installed at Wilkes College in Wilkes-Barre to be used in connection with a high-pressure electric steam boiler to provide high-quality steam to the laboratory for experiments. Although a removable item, it was attached to the steam boiler.

26. A use tax in the amount of $281.49 was assessed against the petitioner for the purchase in 1972 of flood control shut-off valves, an air solenoid pilot light, pumps and reels installed in the automotive training shop in the Wilkes-Barre Vo-Tech School.

27. A use tax in the amount of $804.00 was assessed against the petitioner for the purchase in 1972 of an air dryer and compressor for installation in the laboratory of Wilkes College. These units are easily connected and removed.

28. A use tax in the amount of $171.00 was assessed against the petitioner for the purchase in 1972 of a packaged steam generator installed at Wilkes College for use in laboratory experiments.

29. The petitioner's records were destroyed by flood waters in 1972.

30. The petitioner never presented exemption certificates to the State Bureau of Sales and Use Tax for any of the above purchases.

31. The petitioner submitted a report to the State Bureau of Sales and Use Tax indicating that its supplier had not charged tax for the merchandise it had purchased during this audit period and that it was remitting sales tax in the amount of $8,074.31.

32. The State Bureau of Sales and Use Tax established that the petitioner should only have reported $1,049.66 as sales tax paid and that the remaining amount was erroneously reported as sales tax, so that J. L. Turner Company therefore had a credit of $7,014.65.

33. The State Bureau of Sales and Use Tax assessed the petitioner for use tax in the amount of $19,627.90 for the audit period from January 1, 1969 to March 31, 1972.

34. The petitioner was credited for the sales tax paid erroneously as a "sales" tax and it was therefore found to owe a use tax deficiency for that period in the amount of $12,613.25, *i.e.*, the difference between $19,627.90 and $7,014.65.

35. The petitioner petitioned the Department of Revenue for reassessment of "use" taxes for the same audit period.

36. The Sales Tax Board of Review concluded that the petitioner had not met its burden of proof, noting however, that the petitioner was entitled to some relief and it therefore abated the penalties.

37. Upon appeal to the Board of Finance and Revenue, the petitioner's account was reassessed, and a use tax of $12,467.44 plus appropriate interest was imposed by the Board.

STATEMENT OF THE ISSUES PRESENTED

The petitioner alleges in its petition for review that it was not given credit for the use taxes erroneously

reported as sales tax and that the items allegedly subject to use tax were not subject to that or any other tax. It argues that:

(a) Tax in the amount of $1,795.20 was improperly imposed upon materials which were incorporated exclusively into public utility facilities to be owned and used by a public utility in the rendition of public utility services.

(b) Tax in the amount of $3,050.41 was improperly imposed on machinery and equipment which was sold and installed for a manufacturer and used directly in its manufacturing operation.

(c) Tax in the amount of $18.75 was improperly imposed upon sub-contracts performed by others.

(d) Tax in the amount of $204.20 was improperly imposed upon materials purchased by the petitioner for resale.

(e) Tax in the amount of $4.34 was improperly imposed upon a freight charge as performed by a common carrier.

## DISCUSSION

The petitioner in this de novo judicial proceeding challenges the imposition of "use" tax upon various items of merchandise purchased by it during the years 1970 through 1972. The tax statute applicable for the relevant purchases in 1970 is The Tax Act of 1963 for Education[1] (Tax Act of 1963) and for the years 1971-72, it is the Tax Reform Code of 1971[2] (Tax Reform Code). Under both tax statutes, it is provided that in "all cases of petitions for reassessment, review or appeal, the burden of proof shall be upon the petitioner or appellant, as the case may be."[3] Accordingly, the

---

[1] Act of March 6, 1956, P.L. 1228, *as amended*, 72 P.S. §3403-1 et seq.

[2] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201.

[3] Section 545 of the Tax Act of 1963, 72 P.S. §3403-545 and Section 236 of the Reform Code, 72 P.S. §7236.

petitioner here has the burden of proving that the use tax has been improperly assessed, and the Board of Finance and Revenue is not required to prove facts necessary to sustain the assessment. *Anastasi Brothers Corporation v. Commonwealth,* 9 Pa. Commonwealth Ct. 288, 305 A.2d 738 (1973), *aff'd,* 455 Pa. 127, 315 A.2d 267 (1974); *Commonwealth v. Beck Electric Construction, Inc.,* 32 Pa. Commonwealth Ct. 229, 379 A.2d 626 (1977).

The petitioner has submitted no construction contracts, no drawings or schematic sketches, no pictures and no documentary evidence. Nor has the petitioner submitted any exemption certificate or applications for exemption certificates which are required to be obtained by a purchaser who seeks to be relieved of tax liability. 72 P.S. §7237(c).

The Commonwealth argues that even absent this evidence, based upon the testimony of the petitioner's witness, it can be established that the materials here concerned were taxable because they were incorporated into the realty so as to be taxable to the petitioner who was the construction contractor and cites *Commonwealth v. Beck Electric Construction Inc., supra,* hereinafter referred to as *Beck.*

In *Beck, supra,* this Court found that the construction contractor was liable under Regulations 207(2) and 150 promulgated by the Department of Revenue, for the use tax assessed upon it on materials which had been incorporated into and made a part of the real estate by it pursuant to construction contracts. Regulation 150 provides in pertinent part with regard to "use" tax as follows:

A contractor is liable for the payment of tax on property used or consumed in the performance of construction activities notwithstanding that such activities are performed pursuant to a contract with a government agency or other entity

or person exempt from tax on its own purchases. . . .

. . . .

Construction activities include the furnishing of necessary materials, supplies, equipment or fixtures, and the use, installation and/or incorporation of them in constructing, reconstructing, erecting, altering, improving or repairing a road, bridge, building, other structure or any real estate. Any contract which requires the contractor to attach or affix property to real estate so that the property becomes a permanent part of the real estate is a construction contract. For example, the installation of a bathtub which is connected with water lines and drain lines is a construction activity, and the installation of an ordinary space-heating furnace is a construction activity.

Regulation 150 also defines "Sales Activities" as:

Any activity resulting from an agreement or contract under which a contractor transfers property or performs taxable services upon property belonging to another person and *does not install such* property so as to become a permanent part of the real estate. (Emphasis added.)

The petitioner argues that it did not install the materials into real estate so as to become a permanent part thereof, but rather that it *sold* the property to an exempt party and is therefore liable for neither use nor sales tax.

In the transactions at issue, we would not deny that there are elements of both a "use" and a "sale." Regulation 150, however, distinguishes the two and indicates at which point the items become a permanent part of the real estate and are then taxable as a "use." *Beck, supra.* Material which is "incorporated" into

and made a part of the real estate pursuant to a construction contract is considered to be *used* and not sold. Accordingly, we must determine if the materials at issue here were improperly assessed.

It is clear that virtually any item installed pursuant to a building construction contract is necessarily subject to a "use" tax inasmuch as it must be incorporated into and made part of the real estate. Moreover, the ease of installation is not dispositive, for an item's relationship to the property as a whole must be considered in determining whether or not it is part of the real estate. *Beck, supra.*

PUBLIC UTILITY EXCLUSION

The substance of the petitioner's first claim is that a tax was improperly assessed on materials which were incorporated exclusively into public utility facilities. Under both tax statutes, sales at retail to purchasers who use the property in the rendition of public utility services are exempt from "sales tax."[4] Similarly, the use or consumption of personal property in constructing or maintaining facilities which are directly used in such service, is exempt from "use tax."[5] The petitioner argues, therefore, that the piping materials purchased by it for its construction contracts with the Wilkes-Barre Housing Authority and the Honesdale Hospital Authority were improperly taxed under the public utility exemption.

---

[4] Under the two applicable tax statutes, it is provided that the term "sale at retail shall not include any transfer of property to be used by the purchaser directly in the operations of producing, delivering or rendering of a public utility service." 72 P.S. §3403-2(j) and 72 P.S. §7201(k)(ii)(C).

[5] The section of the two applicable tax statutes provide that the term "use" shall *not* include:

> [t]he use or consumption of tangible personal property, including but not limited to machinery and equipment and parts [and foundations] therefor, and supplies . . . directly in any of the operations of—

The first items at issue, the piping materials purchased by the petitioner for its construction contract with the Wilkes-Barre Housing Authority, (Authority) were installed in an underground water line for the Authority which was installed, we believe, so as to be incorporated in the realty. It was therefore subject to a "use" rather than to a "sales" tax. The question here is whether or not these materials were used in constructing facilities which are directly used in rendering a public utility service. The Supreme Court has held generally that the term "public utility," as used in the tax statutes concerned, means those persons or corporations defined as such under the Public Utility Code.[6] *Commonwealth v. Lafferty*, 426 Pa. 541, 233 A.2d 256 (1967). This would not include municipal corporations, even though under the Public Utility Code, "municipal corporation" is defined to include municipal authorities created for the purpose of rendering any service similar to that of a public utility. 66 P.S. §1102(15). It is clear that the Authority does not fall within that defined class, and, although it could be a municipal corporation which may render public utility services, the Supreme Court has held that the public utility use tax exclusion does not ipso facto apply. *Commonwealth v. Lafferty, supra.* The court noted, however, that the exclusion might be available in the case of an entity long considered by the courts to

----

. . . .

(iii) The producing, delivering or rendering of a public utility service, or in constructing, [reconstructing], remodeling, repairing or maintaining the facilities [which are directly] used in such service whether or not such facilities constitute real estate : Provided, however, 'real estate' shall not include buildings, roads, foundations or similar facilities.

72 P.S. §3403-2(n)(4)(c)(iii) and 72 P.S. §7201(o)(4)(B)(iii).

6 Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1101 et seq. The Public Utility Code now in effect is found at 66 Pa.C.S. §101 et seq.

be a public utility. *Commonwealth v. Lafferty,* 426 Pa. at 548 n. 9, 233 A.2d at 259 n. 9; *see Commonwealth v. Merritt-Chapman & Scott Corporation,* 432 Pa. 584, 248 A.2d 194 (1968), and *State College Borough Authority v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 363, 31 A.2d 557 (1943). We believe, for example, that municipal water authorities would fall within the *Lafferty* exception because, although the courts have never specifically dealt with the issue, they have treated such municipal authorities as public utilities. In *Commonwealth v. McHugh,* 406 Pa. 566, 178 A.2d 556 (1962), it was assumed that the Philadelphia Water Department was a public utility and the issue was only whether or not the use tax exclusion applied to the construction of new facilities as well as the improvement of existing facilities. The Court allowed the tax exemption for the materials incorporated into the city water system by the construction contractor. In *State College Borough Authority v. Pennsylvania Public Utility Commission, supra,* the Court found that the State College Water Company, a municipal corporation, rendered a public utility service. We do not believe, however, that the Wilkes-Barre Housing Authority is an entity long considered to be a public utility so as to fall within the *Lafferty* exception. Nevertheless, the petitioner argues in its brief that although the construction contract was with the Wilkes-Barre Housing Authority, the "ultimate user" here is the Pennsylvania Gas and Water Company, *i.e.,* a recognized public utility. The Supreme Court has held that the public utility exemption will apply when the facilities' construction is predestined for use in a public utility service by a public utility as such is defined in the Public Utility Code. *Commonwealth v. Erie Excavating & Grading Co.,* 432 Pa. 593, 248 A.2d 191 (1968). It reasoned that the identity of the real beneficiary of the performance and the degree

of exclusivity of public utility use to which the facility was ultimately put is determinative. The court there concluded that a construction contractor is entitled to the sales and use tax public-utility exemption on materials used in construction which is ultimately turned over to a public utility, and it would seem that this approach applies even though the public utility is not a party to the construction contract, the facilities are not owned by the public utility until completion, and neither the contractor nor the other party to the original contract are public utilities. If the construction under the facts may be considered as being performed for the public utility, therefore, we believe that the exemption will apply. The record indicates that the materials at issue were installed and connected to the Pennsylvania Gas and Water Company's water system. The record does not indicate, however, whether or not the facilities were ultimately turned over to the public utility, so we cannot blindly apply the rationale of *Commonwealth v. Erie Excavating & Grading Co., supra*. The burden of establishing in this record that the tax was improperly assessed was clearly upon the petitioner and we cannot say, based upon this record, that the petitioner has proved that the public utility exemption should here apply.

In the construction contract with the Honesdale Hospital, a use tax was assessed on pipes and fittings for the extension of the sewage system to the Honesdale Hospital and installed and incorporated in the realty at the hospital for that utility service. We believe that this exemplifies a "use" in a construction contract. The materials were used in construction of a sewage extension for the municipal sewer, *i.e.,* the Honesdale Municipal Sewage Authority, which the Board of Finance and Revenue concedes in its brief would not be subject to the use tax. We agree.

MANUFACTURING EXCLUSION

The petitioner's second claim is that the assessment of a use tax on several of its purchases was improper because the merchandise was sold and installed for a manufacturer and used directly in its manufacturing operation. Under the two applicable tax statutes, it is provided that the term "use" shall not include:

> [t]he use or consumption of tangible personal property including, but not limited to machinery and equipment and parts and foundations therefor, and supplies . . . directly in any of the operations of—
>
> (i) The manufacture of personal property;

72 P.S. §3403-2(n)(4)(c)(i) and 72 P.S. §7201(o)(4)(i).

Our Supreme Court has recently reviewed the law of this manufacturing exclusion in *Commonwealth v. Air Products and Chemicals, Inc.*, 475 Pa. 318, 322-23, 380 A.2d 741, 744 (1977), wherein Justice POMEROY reviewed that Court's decisions in *Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A.2d 199 (1963) and *Commonwealth v. Olan Mills, Inc. of Ohio*, 456 Pa. 78, 317 A.2d 592 (1974), stating as follows:

> Sitkin's Junk teaches, first, that the excluding provision must be strictly construed against the taxing authority, not the taxpayer, since the statute provides for an exclusion from taxation, not an exemption. 412 Pa. at 141-142. . . . The two definitional requirements for a use to come within the exclusion, were described in Sitkin's thusly:
>
> '[F]*irst*, the *type* of the activity must fall into one or more categories, i.e. "manufacturing, fabricating, compounding, processing or other operations" and *second*, as a *result* of one or more types of the prescribed activities, the per-

sonal property must be placed "in a form, composition or character *different* from that in which [such personal property]'' was acquired.' 412 Pa. at 138, 194 A.2d at 202. (Emphasis in original.)

Once the taxpayer's use of a product is found to satisfy that test, Olan Mills, supra, holds, *inter alia,* that it is irrelevant that the activity constitutes but one step of a production process, for the Act excludes from taxation equipment which is used 'in any of the operations' of manufacturing. . . .

The petitioner here has not specifically indicated in its petition for review which purchases have been allegedly improperly assessed because of "use" in manufacturing. We can glean from its brief, however, that it seeks this exclusion for the items listed in findings of fact 5, 6, 15, 23 and 24. The property concerned in findings 5, 23 and 24 included a water cooling system, connectors, joints and condensate pumps which were used in the petitioner's construction contract with Metropolitan Wire Co. which made metal shelves, and we must first consider whether or not this process is "manufacturing," *i.e.,* whether or not the personal property was placed in a form, composition or character different from that in which it was acquired at Metropolitan Wire Co. The testimony indicated that Metropolitan Wire Co. acquired raw steel, spot welded it together and plated it to produce metal shelving. We believe this to be "manufacturing" for the property clearly acquired a different character as required in *Sitkin's Junk, supra.* The items purchased here were used directly in this manufacturing process and we believe, therefore, that they do fall within the manufacturing exclusion of the tax statutes.

The merchandise in finding 6 consisted of gas control devices installed at the De Sota Quartite Company

to be used by it to make light bulbs and quartz lamps. These devices were used to regulate the pressure and volume of gases which would fill the bulbs. This activity appears also to us to have been "manufacturing" and these items therefore would also fall within the manufacturing exclusion.

The item in finding 15 was a sewage plant installed at McGregor-Doniger Corporation. The witnesses for the petitioner testified the McGregor-Doniger plant did "minor manufacturing" in the form of repairing shirts, such as sewing on missing buttons and placing the shirts into plastic bags, but that it was primarily a storage facility. Regulation 225 of the Department of Revenue provides in subsection 2a(2)(a) that "equipment . . . used . . . to . . . store the product from the first production operation to the time the product is packaged for the ultimate consumer . . . [is] considered to be directly used in manufacturing-processing operations," and the Legislature has designated certain "packaging" equipment as a specific example of property protected by the manufacturing exclusion. 72 P.S. §3404-2(c)(11) and 72 P.S. §7201(c)(1). There is nothing in the record, however, to disclose "the predominant purpose" of the sewage plant at McGregor. We believe, therefore, that the petitioner has not met its burden of proving that the use tax was improperly assessed on this equipment.

SUBCONTRACTS

The petitioner's third claim is that several of its purchases were improperly assessed a use tax because the tax was imposed upon subcontracts performed by others so that there was not a sale at retail and the petitioner could not be subject to tax. The petitioner, however, has not alleged or established which purchases have been improperly assessed this tax, and we must, therefore, find this contention to be impertinent and without merit.

RESALE

The petitioner's fourth claim is that several of its purchases were improperly assessed a use tax because the tax was imposed upon materials purchased for resale. The petitioner has not indicated, however, upon which purchases this tax has been improperly assessed. We do note that tax on sales at retail of tangible personal property which is transferred for the purpose of resale is excluded from use tax. *Commonwealth v. High Welding Company,* 428 Pa. 545, 239 A.2d 377 (1968). However, we find no evidence in this record which would support a finding of "resale." Nearly all of the merchandise in question which was taxed was used in the petitioner's construction contracts and installed so as to become a part of the realty, and it was therefore subject to use tax. *Beck, supra.* The only exception is the merchandise noted in finding of fact 26 which was sold to the Wilkes-Barre School District in the form of reels, pumps, hoses and grease guns, and which the Board of Finance and Revenue would concede remained personalty and therefore would be exempt from the $281.49 use tax imposed. We agree.

FREIGHT CHARGE

The petitioner's final claim is that a use tax was imposed upon a freight charge; however, it offered no testimony and has not brought to our attention any purchase which was so taxed, and therefore we find this allegation to be without merit.

OTHER

The petitioner also, for the first time before this Court, argues in its brief that the law specifically exempts from the imposition of any tax, any sale to a nonprofit educational or charitable organization. 72 P.S. §7204(10). It lists in its brief the merchandise which would allegedly fall within this exemption. Not having raised this question in its petition for review,

however, the petitioner cannot raise any question here concerning exemptions regarding churches, schools, governmental entities or charities. *See House of Pasta, Inc. v. Commonwealth*, 37 Pa. Commonwealth Ct. 317, 390 A.2d 341 (1978). Section 1104 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §1104 provides that questions not set forth in the specification of objections may not be subsequently raised. We will not sua sponte consider other items which may have been improperly assessed use tax absent a specific objection by the petitioner. *Anastasi Brothers Corporation v. Commonwealth, supra.*

Tax Credit

The petitioner argues that it was not given credit for the $7,014.65 erroneously reported as sales tax. We find this contention to be without merit inasmuch as the record reveals that tax was assessed in the amount of $19,627.90 for the audit period from January 1, 1969 to March 31, 1972, and that the petitioner was creditied for $7,014.65, which it had erroneously reported as sales tax. Applying this credit to the tax deficiency, simple mathematics indicates that the outstanding deficiency became $12,613.25 plus appropriate interest and penalties. While this amount was adjusted by the Board of Finance and Revenue to $12,-467.44, it is clear that the credit was applied.

Conclusions of Law

1. The petitioner was given credit for $7,014.65 erroneously reported as sales tax.

2. Use tax in the amount of $45.99 assessed against the petitioner on merchandise purchased by it was not improperly imposed on materials which were incorporated exclusively into public utility facilities to be owned and used by public utility services.

3. Use tax in the amount of $260.33 was improperly assessed against the petitioner on property purchased by it which was used and installed by the petitioner for

a manufacturer and which was used directly in the manufacturing operation.

4. Use tax of $18.75 was not improperly assessed against the petitioner on merchandise used in subcontracts performed by others.

5. Use tax was improperly assessed in the amount of $281.49 against the petitioner on materials purchased by petitioner which were resold to the Wilkes-Barre School District and remained personalty.

6. Use tax of $4.34 was not improperly assessed upon a freight charge against the petitioner.

7. Use tax assessment of $12,467.44 upon the petitioner should be amended by the Board to reflect the improperly imposed use tax of $587.81.

ORDER

AND Now, this 9th day of March, 1979, the appeal of the J. L. Turner Company from the decision of the Board of Finance and Revenue is reversed in part and affirmed in part. Unless exceptions are filed within thirty (30) days of the date hereof judgment is hereby entered in favor of the Commonwealth and against J. L. Turner Company in the amount of $11,879.63 plus interest allowed by law.