Ernest Renda Construction Co., Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Ernest Renda Contracting Co., Inc., A New Jersey Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Ernest Renda Contracting Co., Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued November 14, 1985, before Judges CRAIG and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Keith A. Hunter,* for petitioner.

*Robert P. Coyne,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, February 4, 1986:

In these three appeals Ernest Renda Construction Company, Inc., also known as Ernest Renda Contracting Company, Inc. (Taxpayer), challenges three orders of the Board of Finance and Revenue (Board) which affirmed use tax assessments made by the Department of Revenue (Department) for three tax audit periods: March 31, 1971 through November 30, 1974 (first audit period); January 1, 1975 through December 31, 1977, (second audit period); and January 1, 1978 through December 31, 1980 (third audit period). The facts and legal issues raised in each of the three appeals are substantially the same. We shall, therefore, address the three appeals simultaneously.

Appeals to this Court from the Board are *de novo.* No record is certified to us from the Board; the record is made by this Court. Pa. R.A.P. 1571(f). In these appeals, the parties submitted a partial stipulation of facts. Additionally, an evidentiary hearing was held on April 15, 1985. Based upon the stipulation and our review of the evidence, we make the following findings of fact:

## FINDINGS OF FACT

1. Taxpayer is Ernest Renda Construction Company, Inc., also known as Ernest Renda Contracting Company, Inc., a corporation duly organized and existing under the laws of the State of New Jersey, with its principal office located at County Line Road, R.D. 3, Somerville, Hunterdon County, New Jersey.

2. Taxpayer is a multi-state construction contractor engaged in business primarily in New Jersey, New York and Pennsylvania.

3. Taxpayer is primarily engaged in the business of constructing sewer and water systems.

4. During the three audit periods in question, Taxpayer maintained a vehicle park and repair shop in Orefield, Lehigh County, Pennsylvania.

5. During the three audit periods in question, Taxpayer performed work in Pennsylvania under contracts with a number of municipalities and municipal authorities.

6. During the first audit period, Taxpayer performed the following types of projects in Pennsylvania pursuant to contracts with the following entities:

| | Entity | Type of Project |
|---|---|---|
| a. | Palmerton Municipal Authority | Sanitary Sewer |
| b. | Shenandoah Municipal Authority | Sanitary Sewer |
| c. | Leesport Borough Authority | Sanitary Sewer |
| d. | Derry Township Municipal Authority | Sanitary Sewer |
| e. | City of Lancaster Sewer Authority | Sanitary Sewer |
| f. | Ashland Municipal Authority | Sanitary Sewer |
| g. | Lehigh County | Water System |
| h. | South Whitehall Township | Sanitary Sewer |
| i. | Perkiomen Township | Sanitary Sewer |

j.  Strasburg, Lancaster County,
    Borough Authority     Sanitary Sewer
k.  Lower Allen Township
    Authority     Sanitary Sewer

7. During the second audit period, Taxpayer performed the following types of projects in Pennsylvania pursuant to contracts with the following entities:

| | Entity | Type of Project |
|---|---|---|
| a. | Tyrone Borough Sewer Authority | Sanitary Sewer |
| b. | City of Sunbury | Storm Sewer |
| c. | Strasburg, Lancaster County Borough Authority | Sanitary Sewer |
| d. | Shenandoah Municipal Sewage Authority | Sanitary Sewer |
| e. | Shamokin-Coal Township Joint Sewer Authority | Sanitary Sewer |
| f. | Radnor-Haverford-Marple Sewer Authority | Sanitary Sewer |
| g. | Lower Allen Township Authority | Sanitary Sewer |
| h. | Hempfield Township Municipal Authority | Unknown |
| i. | Derry Township Municipal Authority | Sanitary Sewer |
| j. | Carrol Township Authority | Sanitary Sewer |

8. Taxpayer submitted copies of exemption certificates, naming Taxpayer as contractor for the above-listed projects performed during the second audit period, signed by a representative of the following municipal entities, and asserting the following bases of exemption:

| | Entity | Basis of Exemption |
|---|---|---|
| a. | Tyrone Borough Sewer Authority | Municipal Authority |

|   |   |   |
|---|---|---|
| b. | City of Sunbury | Municipal Authority |
| c. | Strasburg, Lancaster County, Borough Authority | None Listed |
| d. | Shenandoah Municipal Sewage Authority | None Listed |
| e. | Shamokin-Coal Township Joint Sewer Authority | None Listed |
| f. | Radnor-Haverford-Marple Sewer Authority | *Public Utility —Sanitary Sewer |
| g. | Lower Allen Township Authority | Local Government |
| h. | Hempfield Township Municipal Authority | Municipal Authority |
| i. | Derry Township Municipal Authority | None Listed |
| j. | Carrol Township Authority | Municipal Authority |

*Dated July 5, 1978—Six months after close of the second audit period.

9. During the third audit period, Taxpayer performed the following types of projects in Pennsylvania pursuant to contracts with the following entities:

| | *Entity* | *Type of Project* |
|---|---|---|
| a. | South Whitehall Township | Sanitary Sewer |
| b. | City of Sunbury | Storm Sewer |
| c. | Radnor-Haverford-Marple Sewer Authority | Sanitary Sewer |

10. Taxpayer submitted copies of exemption certificates, naming Taxpayer as contractor for the above-listed projects performed during the third audit period, signed by a representative of the following municipal entities, and asserting the following bases of exemption:

|  | Entity | Basis of Exemption |
|---|---|---|
| a. | South Whitehall Township | Political Subdivision |
| b. | Radnor-Haverford-Marple Sewer Authority | Public Utility— Sanitary Sewer |
| c. | City of Sunbury | Municipal Authority |

11. In order to perform the above-listed projects, Taxpayer was required to excavate a trench, place a bedding of crushed stone in the trench, lay the pipe, refill the trench, and return the ground surface to its original condition by either repaving, planting grass seed, or restoring sidewalks and curbs.

12. Some of the sanitary sewer projects listed above required Taxpayer to install pumping stations or metering stations as an integral part of the sewer system.

13. Taxpayer used equipment such as backhoes, generators, air compressors, trash pumps, excavators, hammers, graders, cranes and an office trailer which were not incorporated into the various projects. Some or all of this equipment was kept at Taxpayer's Orefield repair shop.

14. Taxpayer did not file use or sales tax returns for the first audit period. An audit of Taxpayer's books and records was performed by the Department for the first audit period. As a result of this audit the Department issued an assessment to Taxpayer which consisted of the following:

| | |
|---|---|
| Use Tax | $157,714.55 |
| Interest (to 6/30/75) | 18,820.89 |
| Penalty | 39,141.94 |
| Total | $215,677.38 |

15. Of this amount, Taxpayer concedes that $7,-251.24 of the use tax assessment is due the Commonwealth, but it has not paid this tax.

16. An audit of Taxpayer's books and records was performed by the Department for the second audit period. As a result of this audit, the Department issued an assessment to Taxpayer which consisted of the following:

| | |
|---|---|
| Use Tax | $118,527.15 |
| Interest (to 8/31/78) | 14,047.08 |
| Penalty | 28,197.15 |
| | |
| Total | $160,771.38 |

17. An audit of Taxpayer's books and records was performed by the Department for the third audit period. As a result of this audit, the Department issued an assessment to Taxpayer which consisted of the following:

| | |
|---|---|
| Use Tax | $12,352.95 |
| Interest (to 7/81) | 2,742.31 |
| Penalty | 3,088.25 |
| | |
| Total | $18,183.51 |

18. Taxpayer appealed each of the above assessments to the Board of Appeals. The Board of Appeals sustained the assessments for the first and second audit periods in their entirety. The Board of Appeals reduced the assessment for the third audit period by $84.55 and abated the penalty.

19. Taxpayer appealed the decisions of the Board of Appeals to the Board of Finance and Revenue. The Board of Finance and Revenue denied relief to Taxpayer for all three audit periods.

20. Taxpayer's current account balance with the Department for each audit period is as follows:

| | |
|---|---|
| First audit period | $196,870.49 plus interest |
| Second audit period | 146,738.30 plus interest |
| Third audit period | 12,277.90 plus interest |
| Total | $355,886.69 plus interest |

21. Interest on Taxpayer's account balance for the first audit period, as of April 15, 1985, was $152,878.26.

22. Interest on Taxpayer's account balance for the second and third audit periods, as of March 31, 1985, was as follows:

| | |
|---|---|
| Second audit period | $84,274.42 |
| Third audit period | $ 6,680.23 |

23. Taxpayer filed timely Petitions for Review with this Court from the orders of the Board of Finance and Revenue for each of the three audit periods.

### Discussion

Taxpayer challenges the imposition of the use tax upon substantially all of the items assessed by the Department for all three audit periods. Taxpayer argues that because all of the contracts which it performed in Pennsylvania during these audit periods were for public utilities, or municipal authorities, its purchases are excluded from use tax pursuant to Section 201 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7201. Secondarily, Taxpayer asserts that, because it received exemption certificates from certain of the municipal authorities, items purchased for the projects performed for these municipalities are exempt from use tax pursuant to Section 237(c) of the Code, 72 P.S. §7237(c). Additionally, Taxpayer argues that the penalties assessed should be abated because it acted in good faith throughout the audit periods in question.

The burden of proof is upon Taxpayer to establish that the use tax was improperly assessed. Code, section 236, 72 P.S. §7236; *J. L. Turner Co. v. Commonwealth*, 41 Pa. Commonwealth Ct. 146, 399 A.2d 433 (1979). The Board is not required to prove facts necessary to sustain the assessment. *Turner*. Taxpayer claims that the assessment was improper because virtually all purchases of tangible personal property made by it during the assessment period are excluded from use tax pursuant to Section 201(o)(4)(B)(iii) of the Code.

Section 201(o)(4)(B) provides, in pertinent part:

[T]he term 'use' shall not include— . . . .

(B)  The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor, and supplies or the obtaining of the services described in subclauses (2), (3) and (4) of this clause directly in any of the operations of—

. . . .

(iii)  The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in such service, whether or not such facilities constitute real estate: Provided, however, 'real estate' shall not include buildings, roads or similar facilities;

. . . .

The [exclusion] provided in [subparagraph] . . . (iii) . . . shall not apply . . . to materials or supplies to be used or consumed in any construction, reconstruction, remodeling, repair or maintenance of real estate other than machinery,

equipment, parts or foundations therefor that may be affixed to such real estate. . . .

. . . .

The exclusion provided in subparagraph (iii) shall not apply to (A) construction materials used to construct, reconstruct, remodel, repair or maintain facilities not used directly in the production, delivering or rendition of public utility service, or (B) tools and equipment used but not installed in the maintenance of facilities used directly in the production, delivering or rendition of a public utility service.

72 P.S. §7201(o)(4)(B).

In order for Taxpayer to prove that its purchases of tangible personal property are excluded under the above-quoted section, it must show: (1) that it purchased the materials in question for use by a public utility; and (2) that the materials were used directly in providing public utility service. *Air Engineers, Inc. v. Commonwealth*, 91 Pa. Commonwealth Ct. 202, 496 A.2d 1262 (1985). "Public utility" has been defined, for purposes of the exclusion of Section 201 as: (1) a public utility as defined by the Public Utility Code;[1] (2) a contractor who purchases the materials for use by a public utility in a public utility service; or (3) an entity long considered by the courts to be a public utility. *Turner*, 41 Pa. Commonwealth Ct. at 160-162, 399 A.2d at 440-441. Municipal authorities which render a public utility service may be considered public utilities for purposes of the Code. *Id.* Direct use of the materials in providing public utility service has been broadly construed to include materials used to restore the ground surface, including concrete, blacktop, asphalt and salt hay, in addition to piping, meters

---

[1] 66 Pa. C. S. §§101-3315.

and pumps. *General Asphalt Paving Co. of Philadelphia v. Commonwealth,* 94 Pa. Commonwealth Ct. 61, 502 A.2d 779 (1986).

In the case at bar, Taxpayer asserts that these principles of law are applicable to qualify it for the public utility exclusion of Section 201. We have determined, however, that Taxpayer has not proved its qualification. Although the parties stipulated that Taxpayer entered into contracts with the various municipalities and municipal authorites listed above, and Taxpayer's sole witness testified that virtually all of the contracts were for the installation of sanitary sewerage systems, Taxpayer has presented no evidence whatsoever to show that the contracting entities are public utilities, as defined above, or that the specific materials upon which the assessment was based were to be used directly in providing a public utility service. Taxpayer has submitted no construction contracts, drawings, sketches or other documentary evidence to show what performance the contracts required or what materials were purchased to enable Taxpayer to perform the contracts. Nor has Taxpayer submitted any records or accounts to establish what materials were purchased during the three audit periods in question or how the materials were used. We conclude, therefore, that Taxpayer has not met its burden of proving that the purchases made by it during the three audit periods in question qualify for the public utility exclusion.

Taxpayer also contests the assessment of use tax on repair parts purchased for vehicles and construction equipment used by Taxpayer to perform projects in the Commonwealth. Even assuming that Taxpayer's allegations that these items were used in the construction of public utility facilities are true, these parts, as well as the vehicles and construction equipment themselves, are properly subject to the use tax

because they were "used but not installed" in the construction of the facilities. *General Asphalt Paving Co. of Philadelphia.*[2]

Taxpayer next asserts that, with respect to certain projects, it submitted exemption certificates which relieve it of use tax liability pursuant to Section 237(c) of the Code. Section 237(c) provides, in pertinent part:

> If the tax does not apply to the sale or lease of tangible personal property or services, the purchaser or lessee shall furnish to the vendor a certificate indicating that the sale is not legally subject to the tax. The certificate shall be in substantially such form as the department may, by regulation, prescribe. . . . Where a series of transactions are not subject to tax, a purchaser or user may furnish the vendor with a single exemption certificate in substantially such form and valid for such period of time as the department may, by regulation, prescribe. . . . An exemption certificate, which is complete and regular and on its face discloses a valid basis of exemption if taken in good faith, shall relieve the vendor from the liability imposed by this section. An exemption certificate accepted by a vendor from a natural person domiciled within this Commonwealth or any association, fiduciary, partnership, corporation or other entity, either authorized to do business within this Commonwealth or having an established place

---

[2] Taxpayer also alleges that "some" of the repair parts were incorporated into machinery which was then sent out of the Commonwealth. Taxpayer argues that these parts are not subject to tax because they were not used within the Commonwealth. We must reject this argument because Taxpayer has not presented any proof of its allegations.

of business within this Commonwealth, in the ordinary course of the vendor's business, which on its face discloses a valid basis of exemption consistent with the activity of the purchaser and character of the property or service being purchased, shall be presumed to be taken in good faith and the burden of proving otherwise shall be on the Department of Revenue.

72 P.S. §7237.

As required by the statutory language, the Department of Revenue has promulgated regulations which provide in pertinent part:

The [public utility] exemption is limited to the purchase of property constituting equipment, machinery, and parts thereof which the contractor, in conjunction with his contract, transfers to and is subsequently used directly by the public utility. . . . To qualify for the exemption the equipment, machinery or parts thereof shall be used directly in the rendition of a public utility service . . . upon installation.

. . . .

(c)   Notwithstanding any other procedure established by this section, any contractor, . . . . shall obtain a 'Certification' from the exempt public utility, . . . certifying:

. . . .

(iii)   That upon installation it will be directly used by the exempt customer in its public utility facilities. Attached to the 'certification' will be a listing of the specific items of equipment, machinery or parts upon which the exempt customer claims an exemption.

61 Pa. Code §31.13(b) & (c).

The certifications submitted by Taxpayer in the case at bar are not complete and regular on their face because they do not contain a list of the items of equipment, machinery or other materials which Taxpayer claims are exempt from the tax. Additionally, we note that in most instances the exemption certificates do not indicate the basis of exemption which is now asserted by Taxpayer in this appeal, namely the public utility exclusion. Rather, these certificates state that the issuing entity is exempt from tax because it is a municipal corporation. While a municipal corporation may be exempt from the payment of sales tax as a political subdivision of the Commonwealth, *see* Section 204(12) of the Code, 72 P.S. §7204(12), this exemption does not exempt Taxpayer, a contractor, from payment of use tax. Only those materials purchased for direct use in providing public utility service are exempt.

Finally, Taxpayer asserts that the twenty-five percent penalty assessed against it should be abated pursuant to Section 269 of the Code. Section 269, 72 P.S. §7269, provides:

> Upon the filing of a petition for reassessment or a petition for refund as provided under this article by a taxpayer, additions or penalties imposed upon such taxpayer by this act may be waived or abated, in whole or in part, where the petitioner has established that he has acted in good faith, without negligence and with no intent to defraud.

We cannot conclude that Taxpayer has established that it acted "in good faith, without negligence and with no intent to defraud." It has failed to file the required tax returns, *see* Code, Section 266(a), 72 P.S §7266(a), has failed to pay tax on assessments which it concedes are valid, *see* Code, Section 241, 72 P.S. §7241, and has failed to keep or provide to the Com-

monwealth appropriate records from which it might be determined what materials were used for exempt purposes, *see* Code, Section 271, 72 P.S. §7271. At a minimum these failures to comply with the requirements of the Code indicate negligence on the part of Taxpayer which warrants the imposition of additions or penalties sought by the Department

## Conclusions of Law

1. Taxpayer has not met its burden of proving that purchases of tangible personal property made by it during the three audit periods in question qualify for the public utility exclusion.

2. Taxpayer has not submitted exemption certificates which are complete and regular on their face so as to relieve it from use tax liability.

3. Taxpayer has not established that it acted in good faith and without negligence so as to require the abatement of additions or penalties.

4. Use tax was properly assessed by the Department against Taxpayer for the first audit period in the amount of $157,714.55 together with a penalty of $39,141.94.

5. Use tax was properly assessed by the Department against Taxpayer for the second audit period in the amount of $118,527.15 together with a penalty of $28,197.15.

6. Use tax was properly assessed by the Department and affirmed by the Board of Appeals against Taxpayer for the third audit period in the amount of $12,268.04.

ORDER IN 3732 C.D. 1984

AND Now, February 4, 1986, the order of the Board of Finance and Revenue, No. RST-1607, is affirmed.

It is further ordered that unless exceptions are filed within thirty (30) days of this Order, the Pro-

thonotary shall enter judgment in favor of the Commonwealth of Pennsylvania in the amount of $349,-748.75, plus interest from April 15, 1985.

ORDER IN 2365 C.D. 1979

AND Now, February 4, 1986, the order of the Board of Finance and Revenue, No. RST-3224, is affirmed.

It is further ordered that unless exceptions are filed within thirty (30) days of this Order, the Prothonotary shall enter judgment in favor of the Commonwealth of Pennsylvania in the amount of $231,-012.72, plus interest from March 31, 1985.

ORDER IN 2195 C.D. 1982

AND Now, February 4, 1986, the order of the Board of Finance and Revenue, No. RST-5399, is affirmed.

It is further ordered that unless exceptions are filed within thirty (30) days of this Order, the Prothonotary shall enter judgment in favor of the Commonwealth of Pennsylvania in the amount of $18,-958.13, plus interest from March 31, 1985.

PER CURIAM ORDER

Now, May 1, 1986, upon consideration of the parties' stipulation of waiver of argument on exceptions, and having considered petitioner's exceptions filed March 6, 1986, said exceptions are dismissed and our prior orders entered February 4, 1986 are hereby entered as the final orders in these cases.