Commonwealth, Appellant, *v*. Erie Excavating & Grading Co.

594

Argued May 21, 1968. Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen, O'Brien and Roberts,
JJ.

*Vincent Yakowicz*, Deputy Attorney General, with
him *William C. Sennett*, Attorney General, for Com-
monwealth, appellant.

*Richard C. Fox,* with him *John M. Wolford,* and *Dunn & Wolford,* and *McNees, Wallace & Nurick,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 27, 1968:

This matter comes before us on appeal from the judgment of the Court of Common Pleas of Dauphin County excluding Erie Excavating & Grading Company (hereinafter Erie) from the payment of a use tax previously assessed by the Commonwealth. The case involves interpretation of the public utility exclusion contained in The Tax Act of 1963 for Education.[1]

The germane facts are as follows: The United States Army Corps of Engineers decided to increase the size of a Pennsylvania reservoir. This increase, as plotted, would inundate certain portions of the right of way of the Erie Railroad Company. Pursuant to the Flood Control Act of 1938, the Engineers contracted with the Railroad to arrange replacement on higher ground of the track sections destined for flooding. Upon completion of the new right of way and approval by the Railroad, the new roadbed would become the property of the Railroad.

The Engineers invited bids on the project. Erie was chosen to construct a certain segment. On May 7, 1962, some two years subsequent to the contract between the Engineers and the Railroad, Erie entered into a contract with the United States of America for the necessary work. The job was done and the Railroad took possession and presently operates on the Erie-constructed roadbed.

The Commonwealth assessed use tax liability against Erie for the tangible personal property utilized in constructing the new roadbed. Erie countered with

---

[1] Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 P.S. §3403-1 et seq. In particular, the use tax exclusion found in §2(n) (4) (e) (iii) thereof, 72 P.S. §3403-2(n) (4) (c) (iii).

the exclusion mentioned above and outlined, infra. The court below, on stipulated facts, found in taxpayer's favor.

The operative language of the exclusion provides: ". . . the term 'use' shall not include . . . (c) The use or consumption of tangible personal property . . . directly in any of the operations of . . . (iii) The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities used in such service . . . ."

Because neither of the two entities which were the immediate parties to the construction contract were public utilities, the Commonwealth asserts that the exclusion does not apply. We do not agree, and, accordingly, affirm the decision of the court below.

The Commonwealth hinges much of its argument here on our decision in *Commonwealth v. Lafferty*, 426 Pa. 541, 233 A. 2d 256 (1967), where we considered a facet of the same exclusion now at issue. The contention seems to be that *Lafferty* dictates that to come within the perimeter of the exclusion in question, every claiming entity must itself be a public utility. To support this position the Commonwealth cites the following language of *Lafferty*: ". . . the statutory exclusion in question was meant by the Legislature to apply only to Public Utility Code 'public utilities' when they render Public Utility Code 'services' (footnote omitted)." *Commonwealth v. Lafferty*, supra, at 547, 233 A. 2d 256, at 259.

This is a misreading and misconstruction of that opinion. *Lafferty* involved the *initial* clause of subparagraph (iii) of the exclusion reproduced above. To wit, "use" does not include tangible personal property used or consumed directly in any of the operations of ". . . *the producing, delivering or rendering* of a public utility service . . . ." (Emphasis supplied.) See *Com-*

*monwealth v. Lafferty*, supra, at 543 n. 1, 233 A. 2d 256, 257 n. 1 (1967).

We held there that to qualify for this "producing, delivering or rendering" portion of the exemption, an entity had to be a public utility as that term is defined in the Public Utility Code, with a possible exception.[2]

But this rationale certainly does not extend to the second or "construction" clause of the exclusion. This fact is implicit in our decision in *Commonwealth v. McHugh*, 406 Pa. 566, 178 A. 2d 556 (1962), where a construction company took advantage of the exclusion. See also, *Commonwealth v. Lafferty*, supra, at 547 n. 9.

We take it, then, that the real argument intended here by the Commonwealth is that in order to qualify for the second, "construction" portion of subparagraph (iii), when a contractor is constructing facilities contractually predestined for use in public utility service by a Public Utility Code public utility, it is necessary for that public utility to contract directly with the contractor, to itself make payment to the contractor and hold title to the relevant property at the time of performance. This is the central question for decision here and is one of first impression. In the framework of this question, it is quite necessary to reconsider the primary holdings of *Commonwealth v. Lafferty*, supra; *Commonwealth v. Equitable Gas Company*, 415 Pa. 113, 202 A. 2d 11 (1964); and *Commonwealth v. McHugh*, supra. What these cases have determined is now a "given"; what is decided here is a minor extension of that "given."

---

[2] In *Commonwealth v. Lafferty*, 426 Pa. 541, 547, 548 n. 9, 233 A. 2d 256, 259 n. 9 (1967), the *possibility* of a "judicial public utility" for purposes of this exclusion is mentioned. But see, *Commonwealth v. Merritt-Chapman & Scott Corporation*, 432 Pa. 584, 248 A. 2d 195 (1968).

To particularize: the jugular issue in the instant case is whether this construction by Erie is to be considered as performed for the Railroad, when it was contracted and paid for by the United States Army Corps of Engineers, on land owned by the Corps, and later relinquished to the Railroad pursuant to the terms of a pre-existing contract. We think it should be so considered.

On the facts of this case, it becomes unimportant to emphasize the nature of the parties to the construction contract. The more relevant inquiry goes to the bona fides of the original arrangement between the Engineers and the Railroad, the type of construction performed, the identity of the real beneficiary of the performance, and the degree of exclusivity of public utility use to which the facility was ultimately put.

And what do we have in the instant case? We have, in effect, a statutory condemnation of Railroad property by the Engineers; we have a replacement contract between these latter parties;[3] we have construction of a piece of work that has a singular, public utility "personality" and which was to be used directly in rendering a public utility service;[4] and the only beneficiary thereof, *ab initio* and by contract, was the Railroad.

If the Army had opted to provide money damages here instead of actual replacement, and the Railroad had in turn paid a contractor to do the necessary work, the exclusion would apply. It seems to us that we would be elevating form over substance to reach a contrary result on the facts of this case.

We quite agree with the court below when it said: ". . . [This] facility was designed for use in a public

[3] It is to be noted that this contract tailored the future construction to the Railroad's requirements and gave the Railroad a large degree of supervision over the construction project itself.

[4] See 72 P.S. §8403-2(n)(4)(c)(iv), at third subparagraph.

utility service, was contracted to be constructed *solely* for use in a public utility service, and the contractual commitments by and among the interested parties lent reasonable certainty to the ultimate use of the facility to the purposes for which it was designed and constructed." (Emphasis supplied.) *Commonwealth v. Erie Excavating & Grading Co.*, 87 Dauph. 330, at 337 (1967).

The Commonwealth seems to fear that it may one day be faced with an analogous case where the "reasonable certainty" alluded to in the quote *supra*, will not come about. Again, we turn to Judge Bowman below and we concur in his riposte to this: "Nor do we believe that the Commonwealth is completely without remedy if such an event did occur. It could then assert tax liability against the construction contractor." 87 Dauph. 330, at 338 (1967).

Judgment affirmed.

Mr. Justice Musmanno did not participate in the decision of this case.

---

Dissenting Opinion by Mr. Justice O'Brien:

I would deny appellee the benefit of the use tax exclusion.

Inasmuch as the language involved is unclear as to whether the contract must actually be performed *for* the public utility,[1] we must consider the purpose of the exemption. That purpose was obviously to save the public utilities, and thus the people of Pennsylvania, the cost of the use tax which would undoubtedly be passed on to the public utility when facilities were constructed for it. *Com. v. Public Constructors, Inc.*, 432 Pa. 589, 248 A. 2d 29 (1968), decided this date.

---

[1] The statute provides that "use" does not include materials involved "in constructing . . . the facilities used in [public utility] service."

However, that purpose is not fulfilled where, as in the instant case, someone other than the public utility is paying for the project. The Army Corps of Engineers is responsible for the cost here, whether the use tax is included or not. It is just as unreasonable for the exclusion to be interpreted as granting a windfall to the Army Corps of Engineers as it would have been in *Com. v. Public Constructors*, supra, for the exclusion to have been construed to benefit contractors rather than the people of Pennsylvania.

I therefore dissent.

Mr. Justice COHEN joins in this dissenting opinion.