## Allison Engineering Company, Appellant, *v.* Commonwealth of Pennsylvania, Appellee.

Argued June 2, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

624

*Leo M. Stepanian,* for appellant.

*Paul S. Roeder,* Assistant Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, August 4, 1975:

This de novo tax appeal from the order of the Board of Finance and Revenue sustaining the decision of the Sales Tax Board is before this Court on a stipulation of facts. These facts, which we adopt, reveal that appellant is and has been for over thirty years engaged in coal strip mining and processing operations in Pennsylvania.

In October of 1970, appellant purchased a helicopter, which it uses in its business for a variety of purposes. On February 26, 1973, the Bureau of Taxes for Education, conducted an audit of appellant's business and determined that appellant understated its use tax liability in the amount of $5,406.48 plus interest and penalties arising out of its purchase of the helicopter. Following the appropriate review procedures below, appellant has appealed to this Court, contending that the helicopter purchase was exempt from taxation because of its use "directly" in its mining operations.

At issue in this appeal is the interpretation of sections 201(o) (4) (B) (i) and 201(c) (3) of the Tax Reform Code of 1971[1] and Regulation 228 of the Department of Reve-

---

1. Act of March 4, 1971, P.L., *as amended,* 72 P.S. §§7201(o) (4) (B) (i), 7201(c) (3).

nue.[2] For the reasons hereinafter stated, we affirm the order of the Board.

Section 202(b) of the Code, 72 P.S. §7202(b), imposes a use tax on the use of tangible personal property purchased at retail. Section 201(o)(4)(B)(i) provides that "use" shall not include—

"(B) The use . . . of tangible personal property, including but not limited to machinery and equipment and parts therefor . . . *directly* in any of the operations of—

"(i) The manufacture of personal property;" (Emphasis added.)

Section 201(c)(3) defines "manufacture" as:

"Refining, exploring, mining . . . any natural resources, minerals. . . ."

Regulation 228 of the Department further defines the term "directly." Therein it provides:

"2. *The Mining Exemption.*

"a. . . . The purchase or use of tangible personal property . . . by a person engaged in the business of mining is exempt from tax if such property is *predominantly used directly* by him in mining operations. . . ." (Emphasis added.)

Predominant use is thereafter defined as:

"2.a.(2) . . . The purchase or use by a mine operator of property . . . when predominantly used directly in mining, is exempt from tax. Where a single unit of such property is put to use in two different activities, one of which is a 'direct' use and the other of which is not, the property is not exempt from tax unless the

---

2. The helicopter was purchased prior to the enactment of the Tax Reform Code of 1971, and, therefore, a portion of the asserted tax liability was computed under the Tax Act of 1963 for Education, Act of May 29, 1963, P.L. 49, 72 P.S. §3403-1 et seq. The statutory language of the Tax Reform Code of 1971 is identical to the language of the 1963 Act, and, therefore, for the purposes of this decision, we shall restrict ourselves to references to the Tax Reform Code of 1971.

mine operator makes use of the property more than 50 percent of the time directly in mining operations.

"(a) *General:* Machinery, equipment and parts therefor . . . which are used in the *actual mining production, or to transport or convey the product or personnel* . . . during such production are considered to be directly used in mining operations. . . .

. . . .

"(b) *Testing and Inspection:* Property used to test and inspect the product *during actual mine production* is considered to be directly used. . . .

. . . .

"(e) *Research:* Property which is used directly in research activities is exempt from tax, *provided that the object of the research is the production of a new or improved product* or method of producing a product. . . .

"(f) *Air and Water Pollution Control:* Equipment, machinery and supplies designed and used to control, abate or prevent air and water pollution. . . ." (Emphasis added.)

Appellant concedes that the helicopter is not used 100 percent of the time in actual mining production, but asserts that the stipulated uses require a conclusion that it is so used more than 50 percent of the time as required by the Regulation. Within this regulatory framework, we must, therefore, determine whether appellant's helicopter is predominantly used *directly* more than 50 percent of the time in actual *mining operations.*

The stipulation reveals, as related to the use of the helicopter, that appellant uses it in eight different capacities.[3] For example, the use of the helicopter in abating or

---

3. The helicopter is used for (1) mapping investigation and exploration, (2) pipeline observation, (3) transportation of repair parts, (4) transportation of personnel, (5) supervisory communications with operations crews, (6) inspection of mining, backfilling and reclamation operations, (7) daily inspections to assist in con-

controlling air and water pollution is observatory in nature, and it is from the observations made from the helicopter that appellant can take whatever steps are necessary to actually abate or control the pollution. Undoubtedly, the helicopter enables the appellant to more readily identify potential or actual sources of pollution but that does not mean that the helicopter is "directly used" in mining.

Similarly, analysis of the other uses of the helicopter can only lead to the conclusion that, as with its use to control air and water pollution, its primary and predominant use is associated with supervisory and managerial functions. Such uses are tangential to, but not a direct use in, the mining operation as required by the statute and Regulation.

Accordingly, we enter the following

### ORDER

Now, August 4, 1975, the order of the Board of Finance and Revenue is affirmed. Unless exceptions are filed hereto within thirty (30) days hereof, the Chief Clerk is directed to enter judgment in favor of the Commonwealth and against Allison Engineering Company in the amount of $5,406.48 with interest from date of assessment.

---

trolling and preventing water and air pollution problems, and (8) transporting coal samples from the pit to the processing plant for testing.