Commonwealth of Pennsylvania *v.* Ragnar
Benson, Inc., Appellant.

Argued June 9, 1976, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer and Blatt. Judges Kramer and Rogers did not participate.

*Albert J. Tomalis, Jr.,* with him *Metzger, Hafer, Keefer, Thomas and Wood,* for appellant.

*Paul S. Roeder,* Deputy Attorney General, with him *Donald J. Murphy,* Deputy Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., November 24, 1976:

Ragnar Benson, Inc. (Appellant) is an engineering and construction firm which was engaged as a subcontractor to design and construct two natural draft cooling towers for the Limerick, Pennsylvania, generating station of Philadelphia Electric Company (PECO). On September 27, 1972, the Bureau of Sales and Use Tax (Bureau) assessed use tax against Appellant on tools, equipment and supplies used in connection with the Limerick construction project. On June 26, 1974, the Board of Finance and Revenue (Board) sustained that portion of the contested assessment which applied to Appellant's use of materials and tools rented and purchased after March 4, 1971.[1] This appeal followed.

The contested use tax was assessed on items purchased or rented by Appellant after March 4, 1971. The items include: rock bolts for connecting the cooling towers' legs to the bedrock (assessed tax is $13.91); certain equipment rented by Appellant, such as a pump, test jack and torque wrench (assessed tax is $25.29); surveying material consumed at the job site (assessed tax is $.60); covering material used at the job site to protect lumber, etc., from the weather

---

[1] The total deficiency assessment was initially $3,206.03. This was reassessed to $3,044.25 and Appellant contested $582.80. The Board sustained $421.00 of the contested assessment. The Board granted relief for the remaining $161.00 which had been assessed on lumber and nails purchased prior to March 4, 1971, and consumed in the construction of the towers.

(assessed tax is $79.72) ; lumber and nails used to construct temporary weather protection sheds for tools, etc. (assessed tax is $11.80) ; and lumber and nails used to construct the form for the concrete forming the towers (assessed tax is $289.68).

The issue is whether all or some of these items are within the ''public utility'' exemption from the use tax.

Section 201(o)(4)(B) of the Tax Reform Code of 1971 (Code)[2] exempts from the definition of ''use'', the use or consumption of tangible personal property in any of the operations of:

> (iii) The producing, delivering, or rendering of a public utility service, *or in constructing*, reconstructing, remodeling, repairing, or maintaining *the facilities which are directly used in such service*, whether or not such facilities constitute real estate: Provided, however, 'real estate' shall not include buildings, roads, foundations, or similar facilities. (Emphasis added.)

The section goes on to provide limitations upon this general exemption:

> The exclusions provided in subparagraph[s] . . . (iii) . . . shall not apply to . . . materials or supplies to be used or consumed in any construction . . . of real estate other than machinery, equipment or parts therefor that may be affixed to such real estate. The exclusions provided in subparagraph[s] . . . (iii) . . . shall not apply to tangible personal property or services to be used or consumed in managerial sales or other nonoperational activities, nor to the purchase or use of tangible personal property by any person other than the person directly using the same in the aforesaid operations.

---

2 Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7201(o)(4) (B).

The exclusion provided in subparagraph (iii) shall not apply to (A) construction materials used to construct, reconstruct, remodel, repair or maintain facilities not used directly in the production, delivering or rendition of public utility service, or (B) tools and equipment used but not installed in the maintenance of facilities used directly in the production, delivering or rendition of a public utility service.

It is undisputed that the cooling towers are facilities "directly used" in the rendering of the public utility service and are therefore within the general ambit of the public utility exemption of Section 201 (o)(4)(B)(iii) of the Code. The Commonwealth's position, however, is that the Code changed the prior law so as to limit the exemption for tools, materials and supplies to only those purchased by the *utility itself* where the tools, supplies, etc., neither become part of the machinery or equipment transferred to the utility nor become a component part of the facility under construction.

Prior to the effective date of the Code, the applicable statute was the "Tax Act of 1963 for Education" (1963 Act).[3] Section 2(n)(4)(c) of that act also exempted from the definition of "use," the use or consumption of tangible personal property in any of the operations of:

(iii) The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities *used in such service,* whether or not such facilities constitute real estate: Provided, however, 'real estate' shall not include buildings. (Emphasis added.)

---

[3] Act of March 6, 1956, P.L. (1955) 1228, 72 P.S. §3403-1 et seq. repealed by Act of March 4, 1971, P.L. 47, No. 2.

The descriptive phrase "which are directly" was added by the 1971 Code to further modify the phrase "used in such service." Also, the term "real estate" in the public utility exemption was further narrowed in the 1971 Code to exclude not only buildings but also "roads, foundations, or similar facilities."

The language in Section 2(n)(4)(c) of the 1963 Act which limited the applicability of the public utility exemption stated:

> The exclusions provided in subparagraph[s] . . . (iii) . . . shall not apply to tangible personal property or services to be used or consumed in managerial sales or other nonoperational activities.

> "The exclusion provided in subparagraph (iii) shall not apply to (a) construction materials used to construct, reconstruct, remodel, repair or maintain facilities not used directly in the production, delivering or rendition of public utility service, or (b) tools and equipment used but not installed in the maintenance of facilities used in the production, delivering or rendition of a public utility service.

The cases which have construed the applicability of the public utility exemption to contractors were all decided prior to the enactment of the Code.

In *Commonwealth v. Erie Excavating & Grading Co.*, 432 Pa. 593, 248 A.2d 191 (1968), the Supreme Court held that a contractor who is constructing facilities for direct use by a public utility in rendering public utility service need not pay tax on tangible personal property *used directly in the construction even where his contract is not directly with the utility itself*. The Court rejected the Commonwealth's contention that only the public utility itself may claim the exemption. In so holding, the Court clarified its holding in *Commonwealth v. Lafferty*, 426 Pa. 541, 233 A. 2d 256 (1967) by pointing out that *Lafferty* only construed the first portion of the public utility exemption,

*i.e.,* "[t]he producing, delivering or rendering of a public utility service" when it held that only public utilities themselves could be exempt under this language. However, the Court, in *Erie Excavating & Grading Co., supra,* held that the second portion of the exemption, *i.e.,* "or in constructing . . . the facilities used in such service" was not restricted to the utility itself and was therefore available to the contractor. The only difference in the exemption under current law is the 1971 addition of the words "which are directly" to modify the words "facilities used in such service." In the instant case, there is no doubt that the cooling towers are "facilities which are directly used in such service." Therefore, the statutory changes brought by the Code do not affect the rationale of *Erie Excavating & Grading Co., supra,* and we must reject the Commonwealth's contention that only the utility itself may claim the exemption.

Prior to the enactment of the Code, the Department of Revenue had promulgated Regulation 150 which stated that contractors could claim the exemption for materials, tools, equipment and supplies *directly used* in the construction of public utility facilities. However, the regulation also provided that the tax was applicable to tools and equipment *used but not installed* in the *maintenance* of public utilities and to property used to *construct facilities not used directly in the rendering of public utility service.* Finally, the regulation provided that tools, equipment, and supplies used exclusively and directly in the construction of a facility used directly in public utility service were exempt when the items did not have a continuing useful life beyond the completion of the construction project. Regulation 150 was generally rewritten after the enactment of the Code[4] and now provides:

---

[4] 2 CCH State Tax Reporter (Pennsylvania), paragraph 64-150, page 6555, effective April 15, 1972.

### 3. Claims for Exemptions.

General: With the exception of the limited exemption set forth under (a) ... below, a contractor may claim no exemption upon his purchase of materials, supplies, equipment or parts which he installs so as to become a part of the real estate in conjunction with his construction activities. Thus, a contractor erecting a building, repairing a roof, replacing a door for a governmental agency, manufacturer, processor, public utility, school district, charitable or religious organization, etc., is required to pay tax upon the property which he consumes *and is not entitled to use the exemption of the ultimate customer for whom he is performing the contract.*

a. Contractors Resale Exemption for Machinery, Equipment or Parts Used Directly in Rendering Public Utility Services, Manufacturing, etc.: Effective March 4, 1971, the exemption which a contractor has with respect to contracts with public utilities, manufacturers, etc., has been limited. The exemption is limited to the purchase of property constituting equipment, machinery and parts thereof which the contractor, in conjunction with his contract, transfers to and is subsequently used directly by the public utility, manufacturer, processor, etc. To qualify for exemption the equipment, machinery or parts thereof must be directly used in the rendition of a public utility service, manufacturing operation, etc., upon installation. The exemption applies whether or not the equipment, machinery or part thereof is affixed to the real estate. (Emphasis added.)

Further, Department of Revenue Ruling No. 61[5] states that the "purchase or use of tools, equipment,

---

[5] Effective September 9, 1972, 2 CCH State Tax Reporter (Pennsylvania), paragraph 64-150, page 6555-13.

234

and supplies by a contractor which are *used but not installed* as a component of a public utility facility are subject to tax."

To the extent that amended Regulation 150 purports to generally limit the applicability of the exemption to the public utility itself, it is invalid since such a limitation is unauthorized by the 1971 statutory amendments and is contrary to our holding in *Erie Excavating & Grading Co., supra.* However, the remaining portion of the regulation may be applied, together with the statutory language, to the items for which exemption is claimed in the instant case.

We hold that the rock bolts are exempt from the tax since they are directly used in the construction of the cooling towers and become a component part thereof. The surveying materials, the lumber and nails used to construct the concrete forms, and the rental equipment (pump, test jack and torque wrench) are subject to the tax since, although they constitute tools directly used in the construction of the towers, they are not installed therein.

The covering material and the tools, nails, etc., used to construct protective enclosures for construction material at the job site are not exempt from the tax since they were used to construct facilities not used directly in rendering the public utility service.

Accordingly, we

## Order

AND Now, this 24th day of November, 1976, unless exceptions are filed within thirty (30) days of this Order, the Prothonotary shall enter judgment in favor of the Commonwealth and against Ragnar Benson, Inc., in the amount of $407.09 for use tax assessed on the following items: rental equipment (pump, test jack and torque wrench); survey material consumed at the job site; covering material used at the job site to pro-

tect building material from the weather; lumber and nails used to construct temporary weather protection sheds; and lumber and nails used to construct concrete forms.

CONCURRING AND DISSENTING OPINION BY JUDGE BLATT:

I concur with the majority's determination that a contractor can claim the public utility exception. I must dissent, however, from the majority's interpretation and application of the exception.

The public utility exception here involved provides that *tangible personal property used or consumed in any of the operations of constructing facilities which are directly used to produce or deliver a public utility service* (hereinafter "direct use facilities") *are not subject to tax.*[1] This provision is an *exclusion* from tax, not an exemption, and, as such, must be liberally construed in favor of the taxpayer. *Commonwealth v. Erie Excavating & Grading Co.,* 432 Pa. 593, 248 A.2d 191 (1968); *Equitable Gas Co. v. Commonwealth,* 18 Pa. Commonwealth Ct. 418, 335 A.2d 892 (1975); *Department of Revenue v. Air Products & Chemicals, Inc.,* 27 Pa. Commonwealth Ct. 136,     A.2d (1976).

I believe that all of the materials and equipment here involved constitute tangible personal property and, because it appears that they were used or consumed in the construction of a direct use facility, they should be subject to the broad tax exception. Section 201 (o)(4)(B) of the Code excludes from tax the "use or consumption of tangible personal property, *including* but not limited to *machinery and equipment and parts therefor and supplies,*" directly in the *construc-*

---

[1] Section 201(o)(4)(B)(iii) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971. P.L. 6, *as amended,* 72 P.S. §7201(o)(4)(B)(iii).

*tion* of direct use facilities,[2] and one of the limiting sections to be considered in relation to the exclusion provides that the "exclusion . . . shall not apply to . . . tools and equipment used but not installed in the *maintenance* of [direct use facilities]"[3] (emphasis added). I interpret these sections of the law as providing that tools and equipment are tangible personal property and excluded from tax, when used or consumed in the *construction* of direct use facilities. Moreover Paragraph 18 of the stipulation of facts entered into by the Commonwealth states that all of the property here involved *would be excluded from tax if purchased by the utility itself,* and the majority here has held that "we must reject the Commonwealth's contention that only the utility itself may claim the [exception]."[4]

I believe that the Bureau's Regulation 150 and Ruling 61, relied upon by the majority, do not fairly interpret the Code. They were clearly promulgated from the erroneous viewpoint, corrected here by the majority, that the exception was not applicable to anyone other than a public utility, and there is no requirement in the Code that tangible personal property be "installed," only that it be "used or consumed." The fact of use or consumption, and the extent thereof, of course, must be proved by the contractor.

Judge MENCER joins in this concurring and dissenting opinion.

---

[2] Section 201(m) of the Code, 72 P.S. §7201(m) defines tangible personal property as "[c]orporeal personal property."

[3] Section 201(o)(4)(B) of the Code, 72 P.S. §7201(o)(4)(B).

[4] In *Allison Engineering Co. v. Commonwealth,* 20 Pa. Commonwealth Ct. 623, 342 A.2d 510 (1975), we considered the question of whether or not a helicopter was tangible personal property used directly in manufacturing operations by the appellant. While we held there that the helicopter was not "directly used" in manufacturing, we apparently felt that it constituted tangible personal property under Section 201(o)(4)(B) of the Code.