803 A.2d 1262

CITY OF PHILADELPHIA, Appellant,

v.

COMMONWEALTH of Pennsylvania, BOARD OF FINANCE AND REVENUE, Appellee.

City of Philadelphia, Appellant,

v.

Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

City of Philadelphia, Appellant,

v.

Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

Supreme Court of Pennsylvania.

Argued April 9, 2002.

Decided Aug. 21, 2002.

James L. Fritz, Sharon R. Paxton, Harrisburg, for City of Philadelphia.

Bart J. DeLuca, Harrisburg, for Commonwealth of Pennsylvania.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, and EAKIN, JJ.

## OPINION

Justice NEWMAN.

The City of Philadelphia (the "City") appeals a determination of the Commonwealth Court denying the City's request for a refund of sales and use taxes paid by its contractors, pursuant to Section 202 of the Tax Reform Code of 1971 (the "tax")[1], on property they purchased and used to build a taxiway, a tunnel and a baggage claim facility (collectively, the "facilities") at the Philadelphia International Airport. The City, as assignee of the contractors' tax refund claims, argued

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202.

that the public utility tax exclusion, set forth at 72 P.S. §§ 7201(k) and 7201(o), required the Commonwealth to refund the tax payments. The Commonwealth Court held that, because the facilities were not used exclusively by public utilities, the exclusion was unavailable.

## Facts & Procedural History

This action arose when the City filed petitions with the Pennsylvania Department of Revenue, Board of Appeals requesting refunds of the tax payments. The Board denied the requests. The Board of Finance and Revenue also rejected the City's claims. The City then appealed to the Commonwealth Court, which consolidated the claims for refunds of taxes paid on materials used to construct: the taxiway in the amount of $31,338.62 (Docket No. 809 F.R. 1998); the tunnel in the amount of $28,885.64 (Docket No. 958 F.R. 1998); and, the baggage claim facility in the amount of $12,858.27(Docket No. 636 F.R. 1998). The Commonwealth Court, relying upon *Commonwealth v. Erie Excavating & Grading Co.*, 432 Pa. 593, 248 A.2d 191 (1968) and *Commonwealth v. Public Constructors, Inc.*, 432 Pa. 589, 248 A.2d 29 (1968), affirmed the determinations of the Board of Finance and Revenue and held that the exclusion was not available. *City of Philadelphia v. Commonwealth of Pennsylvania Board of Finance and Revenue*, No. 636 F.R. 1998, No. 809 F.R. 1998, and No. 958 F.R. 1998, slip op. at 9 (Pa. April 30, 2001). The City filed a direct appeal to this Court. We granted limited oral argument and directed the parties to consider "whether the public utility sales and use tax exclusion is available for the construction of facilities to be used predominantly but not exclusively by public utilities."

The facts of this case are undisputed.[2] The Pennsylvania Department of Transportation Bureau of Aviation and the United States Federal Aviation Administration license the

---

2. The original record contains a December 20, 2000 Partial Stipulation of Facts and a January 19, 2001 Supplemental Stipulation of Facts (collectively, the "Stipulation"). The paragraphs in the stipulations are numbered consecutively such that the Partial Stipulation ends at paragraph 26 and the Supplemental Stipulation begins at paragraph 27.

City of Philadelphia to operate a public airport. Stipulation ¶¶ 13, 14. Twenty-five scheduled passenger carriers and eight cargo airlines (collectively "Common Carriers") operate from the Airport. *Id.* at ¶ 17. The passenger carriers serve over 100 domestic and international destinations. *Id.* The cargo carriers transport over 600,000 tons of freight annually. *Id.* The parties agree that the Common Carriers account for eighty-eight percent of the landings and takeoffs at the Airport. *Id.* at ¶ 18. The remaining twelve percent of the flights are by private, corporate and charter aircraft. *Id.* at ¶ 31. There is also no dispute that the Common Carriers are public utilities.[3] *Id.* at ¶ 19.

### The Tax

Article II, Section 202 of the Tax Reform Code, 72 P.S. § 7202, authorizes the imposition of a sale and use tax. Subsection (a) provides that a sales tax is to be imposed on "sale[s] at retail" within the Commonwealth. The sales tax is collected by the seller of "tangible personal property or services" from the purchaser. 72 P.S. § 7202(a). Similarly, subsection (b) imposes a tax on the use of "tangible personal property" and services "purchased at retail." The person who uses the property is liable for the use tax. To avoid double taxation, the statute also provides that a taxpayer who pays the sales tax is not required to pay the use tax.

Essential to an analysis of the sales tax is the definition of the term "sale at retail." The Tax Reform Code defines a "sale at retail" as:

> Any transfer, for a consideration, of the ownership, custody or possession of tangible personal property, including the grant of a license to use or consume whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected.

72 P.S. § 7201(k)(1).[4] This broad definition of transfers for consideration would, absent an exclusion, clearly encompass

---

**3.** The term "public utility" is defined in the Pennsylvania Public Utility Code, 66 Pa.C.S. §§ 101–3316.

**4.** Similarly, 72 P.S. § 7201(f)(1) defines a "purchase at retail" as:

the property the contractors purchased and used to build the airport facilities. The public utility exclusion exempts transfers of property used in rendering a public utility service or constructing facilities used in rendering a public utility service. 72 P.S. § 7201(k)(8)(C). The exclusion provides that:

> The term **"sale at retail"** shall not include (i) any such transfer of tangible personal property or rendition of services for the purpose of resale ... used or consumed by the purchaser directly in the operations of ... **[t]he producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in producing, delivering or rendering such service.**

72 P.S. § 7201(k)(8)(C) (emphasis added). Tracking the words of the statute, it is clear that the contractors purchased tangible personal property that was used in the operation of rendering a public utility service and constructed facilities used in the rendering of a public utility service. The issue in this case is whether use of the facilities by a public utility must be exclusive for the exclusion to apply.

### Discussion

The Commonwealth argues—and the Commonwealth Court held—that the Opinions of this Court in *Erie Excavating* and *Public Constructors* mandate that the facilities be used exclusively by public utilities for the exclusion to apply. The Commonwealth Court correctly followed these precedents of this Court. Its holding that the exclusion is only available for facilities used exclusively by public utilities was consistent with our Opinions. *Public Constructors*, 432 Pa. 589, 248 A.2d 29, 31. Upon further review, however, we believe that the statute never provided a basis for the judicial imposition of an exclusivity requirement. In fact, the statute mandates that

> The acquisition for a consideration of the ownership, custody or possession of tangible personal property other than for resale by the person acquiring the same when such acquisition is made for the purpose of consumption or use, whether such acquisition shall be absolute or conditional, and by whatsoever means the same shall have been effected.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

the exclusion apply, where, as here, the facility is predominantly used by a public utility. 72 P.S. §§ 7201(k) and 7201(o). Consequently, for the reasons that follow, we overrule *Public Constructors*. Additionally, to the limited extent that *Erie Excavating* may be read to imply that the use must be exclusive, we disapprove of it as well.

### Erie Excavating

We begin our discussion with *Commonwealth v. Erie Excavating*, 432 Pa. 593, 248 A.2d 191 (1968). We held in *Erie Excavating* that a party need not be a public utility to satisfy the requirements of the exclusion. The claims in *Erie Excavating* arose when the United States Army Corps of Engineers (the "Corps") retained Erie Excavating ("Erie") to build a railroad bed to replace the one that the Corps intended to flood to expand a nearby reservoir. Erie built the new railroad bed and the Commonwealth assessed use tax liability against Erie. Erie argued that because it built the railroad bed for the railroad, which is a public utility, it should not have to pay the tax. The Commonwealth contended that because Erie was not a public utility, it should not benefit from the exclusion. This Court agreed with Erie and held that Erie need not be a public utility to satisfy the requirements of the exclusion. The Court explained that:

> [I]t becomes unimportant to emphasize the nature of the parties to the construction contract. The more relevant inquiry goes to the bona fides of the original arrangement between the Engineers and the Railroad, the type of construction performed, the identity of the real beneficiary of the performance, and **the degree of exclusivity of public utility use** to which the facility was ultimately put.

*Erie Excavating*, 248 A.2d at 193 (emphasis added). We reasoned that the railroad bed had a "singular public utility 'personality' . . . which was to be used directly in rendering public utility service; and the only beneficiary thereof, [from the beginning] and by contract, was the Railroad." *Id.* (footnotes omitted). We pointed out that we could see no reason to impose a tax against Erie here and not impose it if the

railroad directly retained a contractor to construct facilities. *Id.* Essentially, *Erie Excavating* stands for the proposition that an entity need not be a public utility to benefit from the public utility exclusion. This holding we do not question.

As the above-quoted selection explained, when analyzing whether to apply the exclusion, what is most important is the nature of the construction, who it benefits and the "degree of exclusivity of public utility use to which the facility [is] ultimately put." *Id.* at 193. Because the railroad bed was constructed "solely for use in a public utility service[,]" we held that the property purchased and used to build the railroad bed should not be subject to taxation. *Id.* We did not hold that the use must be exclusive for the exclusion to apply. However, the Court observed that because the public utility railroad exclusively used the railroad bed, it was clear that the degree of exclusivity portion of its test was met and allowed the exclusion.

## Public Constructors

Were it not for our holding in *Commonwealth v. Public Constructors*, 432 Pa. 589, 248 A.2d 29 (1968), we might have limited *Erie Excavating* to its facts. However, in *Public Constructors*, decided the same day as *Erie Excavating*, we expressly held that for the exclusion to apply, the public utility use had to be exclusive. That holding was in error.

The facts of *Public Constructors* are virtually identical to the facts in this case. In *Public Constructors*, the Commonwealth assessed use taxes upon the materials Public Constructors used to build the runways at the Philadelphia Airport and the Allentown–Bethlehem–Easton Airport. Public Constructors argued that it was not subject to the tax because of the public utility exclusion. The trial court held that the exclusion did not apply because Public Constructors performed work for the Airports and not the public utility airlines. That court also pointed to the fact that the airlines did not have the exclusive right to use the runways as another reason why the exclusion did not apply.

On appeal to this Court, the City referred to the express words of the exclusion that "use does not include materials involved in constructing the facilities used in public utility service" and argued that the express words of the statute required the exclusion of tax liability. *Id.* at 31 (internal quotations omitted). We then implicitly recognized that the words of the statute authorized the exclusion. However, we determined that the General Assembly could not mean what it said because application of the exclusion to all situations in which a public utility benefited from construction might leave the Commonwealth without income from other sources, specifically from sales and use taxes relating to highway and bridge construction, which we deemed an absurd result. We also explained that the purpose of the exclusion was to save the public the expense of a tax, which in all likelihood would be passed entirely on to it. If the exclusion were to be allowed to apply in situations in which a public utility was not the exclusive beneficiary of the facility, we reasoned that the state would lose tax money and the public would not get the full benefit of the exclusion.

### The Statutory Exclusion and the Predominant Purpose Standard

■ Before we explain why we now reject the exclusive use test, we turn to an analysis of the statutory exclusion. As we have often observed, when statutes have a bearing on the outcome of a case, we begin by analyzing the express words of the statutes. *Kmonk–Sullivan v. State Farm Mutual Auto. Ins. Co.*, 567 Pa. 514, 788 A.2d 955, 959 (2001). In support of the City's contention that the public utility use need not be exclusive for the exclusion to apply, the City refers us to 72 P.S. § 7201(k)(9) and § 7201(o)(1),(5). Subsection (k)(9) contains a presumption, essentially an internal-statutory rule of construction. It directs us to presume that a sale at retail is subject to the tax unless the taxpayer can prove that the "predominant purpose" of the use is not a sale at retail. The Subsection provides:

> Where tangible personal property or services are utilized for purposes constituting a "sale at retail" and for purposes

excluded from the definition of "sale at retail," it shall be presumed that such tangible personal property or services are utilized for purposes constituting a "sale at retail" and subject to tax **unless the user thereof proves to the department that the predominant purposes for which such tangible personal property or services are utilized do not constitute a "sale at retail."**

72 P.S. § 7201(k)(9) (emphasis added). Similarly, subsection (*o*) restates the presumption in the context of the definition of use. It provides that where the particular use to which tangible personal property is put is subject to an exclusion, the property is to be deemed taxable unless the taxpayer proves that the predominant purpose of the use is an excluded use. Subsection (*o*)(5) provides:

Where tangible personal property or services are utilized for purposes constituting a "use," as herein defined, and for purposes excluded from the definition of "use," it shall be presumed that such property or services are utilized for purposes constituting a "sale at retail" and subject to tax unless the user thereof proves to the department that the **predominant purposes for which such property or services are utilized** do not constitute a "sale at retail."

72 P.S. § 7201(*o*)(5) (emphasis added). No party in *Public Constructors* or *Erie Excavating* cited the foregoing provisions to this Court and we did not discuss them in either Opinion. *See* Appellant's Br., pp. 18–19.

However, the predominant purpose standard was in existence in 1968, when we decided *Public Constructors* and *Erie Excavating. See* 72 P.S. § 3403–2(j)(7)(d) (now repealed). In 1968, 72 P.S. § 3403–2(j)(7)(d) provided:

Where tangible personal property or services are utilized for purposes constituting a "sale at retail" as herein defined, and for purposes excluded from the definition of "sale at retail," **the predominant purpose shall determine whether such purposes constitute a "sale at retail" as herein defined.**

72 P.S. § 3403–2(j)(7)(d) (emphasis added). Similarly, the "use" definitions also contained the predominant purpose standard (72 P.S. § 3403–2(n)(4)(c)(iv) (now repealed)). 72 P.S. § 3403–2(n)(4)(c)(iv) provided:

> Where tangible personal property or services are utilized for purposes constituting a "use," as herein defined, and for purposes excluded from the definition of "use," **the predominant purpose shall determine whether such purposes constitute a "use," as herein defined.**

72 P.S. 3403–2(n)(4)(c)(iv).

■ After consideration of the position of the Commonwealth and our holding in *Public Constructors,* we believe it was error to have engrafted provisions onto the sales and use tax statute. Doing so permitted the Commonwealth to collect a tax in a manner in which the General Assembly expressly prohibited. When interpreting statutes, if their words are clear, we need go no further to discern the intent of the legislature. 1 Pa.C.S. § 1921(b). The statutes at issue here are clear; a sale or use of tangible personal property is taxable unless the taxpayer demonstrates that the predominant purpose of the sale or use is excluded. The General Assembly could have set forth an exclusive purpose test, but it did not do so. Here the predominant users and beneficiaries of the facilities built by the contractors are public utilities and the predominant purpose of those facilities is to serve public utilities. Therefore, the exclusion should apply.

### Revisiting Public Constructors

It is also appropriate for us to address the two reasons we cited in *Public Constructors* in support of the exclusive use standard. In *Public Constructors,* we explained that there should be an exclusivity requirement because: (1) application of any other rule would yield an absurd result; and (2) the purpose of the exclusion—to make sure that the proceeds of the exclusion are passed on to the public at large—would not be served by any other rule. We address these reasons in turn. First, we do not believe that application of the predominant purpose test would yield an absurd result. The Court in

*Public Constructors* was concerned that application of any test other than one of exclusive use would prevent the Commonwealth from collecting sales and use taxes attributable to sales of materials used for highway and bridge construction. However, there is no evidence that the predominant user of highways and bridges are public utilities. In fact, the Commonwealth admits that the opposite is true. The Commonwealth stipulated that eighty-seven percent of the traffic on the Pennsylvania Turnpike is composed of passenger car traffic and that less than thirteen percent is by public utilities. Stipulation ¶¶ 20–21. The Commonwealth also admitted that, "substantially less than thirty percent of traffic on Pennsylvania highways consists of vehicles operated by public utilities." Stipulation ¶ 22 (citing Pennsylvania Department of Transportation, Bureau of Planning and Research, *Pennsylvania Highway Statistics* (1999 and 2000)). Accordingly, if we apply the statute by its terms, the Commonwealth does not appear to be at risk to lose sales and use taxes relating to public utility use of highways.

Finding the existence of the predominant purpose standard is also not inconsistent with the holding of *Erie Excavating.* In *Erie Excavating,* we assumed that all use of the railroad was by a public utility. This assumption is understandable given that the railroad company owned the tracks and the railroad bed that Erie Excavating constructed. However, when we consider the use of a railroad, we note that not every car that rides the railroad is operated by a public utility. Amtrak permits its trains to be chartered (http://www. amtrak.com/services/charter.html) and the website for the American Association of Private Railroad Car Owners lists fifty different private rail cars, which it claims are available for use most places that Amtrak trains go. (http://www.aaprco. com/car/car_index_intro.html (last visited May 2002)). Accordingly, although this Court assumed that the railroad bed that Erie Excavating built was constructed "solely for use in a public utility service[,]" the facts may have been otherwise. *Erie Excavating,* 248 A.2d at 193. Therefore, the result in *Erie Excavating* was the correct one but not because of an

exclusivity test. By the express terms of the statute, the public utility exclusion applies whether the railroad bed was used exclusively by a public utility · or predominantly by a public utility. Such a result makes sense, is not absurd and, most importantly, is consistent with the applicable statutes.

The second reason the *Public Constructors* Court cited in favor of the exclusivity requirement was that the purpose of the exclusion, which was "obviously" to pass the proceeds of the exclusion on to the public at large, would not be served by any other rule. *Public Constructors*, 248 A.2d at 31. Although this policy is a reasonable explanation for the public policy exclusion, the Court did not state how it identified this purpose nor did it cite any authority for it. Additionally, as the dissent in *Erie Excavating* pointed out, the policy of passing all of the proceeds of the exclusion on to the public was not served in that case. Indeed, because the Corps paid Erie to perform the work, any money that Erie saved through the exclusion was *not* passed on to the riders of the railroad. *Erie Excavating*, 248 A.2d at 193–194. We agree with this criticism of the Court's policy identification.

█ In this case, as in *Public Constructors,* there is no need to go beyond the words of the statutes, which we now track. The Commonwealth of Pennsylvania imposed a tax upon "each separate sale at retail of tangible personal property or services ... within this Commonwealth." 72 P.S. § 7202. The public utility exemption provides that a sale at retail is excluded from taxation if it is used in:

**The producing, delivering or rendering of a public utility service, or in constructing, reconstructing, remodeling, repairing or maintaining the facilities which are directly used in producing, delivering or rendering such service.**

72 P.S. § 7201(k)(8)(C) (emphasis added). Even if the property is used in a public utility service it is presumed to be taxable unless:

the user thereof proves to the department that the **predominant purposes** for which such tangible personal property or services are utilized do not constitute a "sale at retail."

72 P.S. § 7201(k)(9) (emphasis added). Similarly, subsection (o)(5) provides that a use is taxable unless:

the user thereof proves to the department that the **predominant purposes for which such property or services are utilized** do not constitute a "sale at retail."

72 P.S. § 7201(o)(5) (emphasis added). The statutes are clear. If a sale or use is for the predominant purpose of public utility service, it is not taxable. There is no requirement in the statutes that the sale or use must be exclusively for the purpose of public utility service. Accordingly, we reverse the determination of the Commonwealth Court—recognizing that, based on our prior opinions, its ruling was proper.

Justice EAKIN files a dissenting opinion in which Chief Justice ZAPPALA and Justice CAPPY join.

Justice EAKIN, dissenting.

"The purpose of the public utility exclusion is obviously to save the public utilities, and thus the public, the cost of the use tax which would undoubtedly be passed on to the public utility where facilities were constructed for it." *Commonwealth v. Public Constructors*, 432 Pa. 589, 248 A.2d 29, 31 (1968). If a private project provides for the public in lieu of the government doing so, tax consideration is logical and appropriate.

This logic underlies the decision of this Court in *Public Constructors*, which held if one is to avoid 100% of the tax, 100% of the project must benefit the public—anything less would result in a windfall for the contractor, at the expense of the taxpayer. "[W]here the use is less than exclusive, and the exclusion were allowed, the Commonwealth forgoes the entire tax while only part of the resulting lower cost of the project would redound to the benefit of the citizens of the Commonwealth." *Id.*, at 31. The exclusion is not scaled—if applicable, 100% of the tax otherwise flowing to the public coffers is excused. Here, 88% of the project is for public use, but 12% is not, and the tax on 12% of a project this size is no small matter.

As the Majority notes, the facts of *Public Constructors* are nearly identical. The legislature has had years to amend the

statute if the rule of exclusivity was deemed inappropriate; it has not done so. Thirty-four years ago, this Court said, "[w]e cannot ascribe to the legislature an intention that anything less than exclusivity of use by a public utility suffices to enable the contractor to qualify for the [use tax] exclusion." *Id.*, at 31. Given the decades of apparent satisfaction with the rule, I believe the legislative intent is even clearer than it was in 1968. Given the logic of that intention, I cannot find sufficient reason to change the rule, and offer this respectful dissent.

Chief Justice ZAPPALA joins this dissenting opinion.

Justice CAPPY joins this dissenting opinion.