832 A.2d 428

**ELITE INDUSTRIES, INC., Corporate Livery, Inc., J J Leasing Rentals, Inc., Tropiano Transportation Service, Inc., Appellees,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Appellant.**

Supreme Court of Pennsylvania.

Argued May 15, 2003.

Decided Sept. 24, 2003.

Matthew Totino, Bohdan R. Pankiw, Rhonda L. Daviston, Harrisburg, Robert James Longwell, for Public Utility Commission.

Robyn Rachelle Ray, for Elite Industries, Inc.

Ray Fredric Middleman, Wexford, for Taxicab & Paratransit Association.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

EAKIN, Justice.

On March 23, 2000, Perry J. Camerlengo applied to the Pennsylvania Public Utility Commission (PUC) for a certificate of public convenience to operate a limousine service

within Pennsylvania. Appellees and others filed protests to the application after it was published in the Pennsylvania Bulletin.

On March 31, 2000, Camerlengo filed an application for temporary authority, which was also protested after publication in the Pennsylvania Bulletin. Camerlengo's application also sought a waiver of § 29.333(a).[1] The PUC granted temporary authority and the requested waiver.

On August 9, 2000, at a hearing before the Administrative Law Judge (ALJ), Camerlengo appeared *pro se* and testified on his own behalf. The protestors, including appellees, appeared by respective counsel and presented documentary evidence only. The ALJ determined Camerlengo failed to meet his burden of proof pursuant to 52 Pa.Code § 41.14(a) and § 41.14(b),[2] and denied his application for a certificate of public convenience. The ALJ also ordered Camerlengo to stop providing unauthorized transportation service in the Commonwealth. Camerlengo filed exceptions to the ALJ's initial decision.

1. Section 29.333(a) of the PUC's regulations provides:
    (a) Limousine service may be operated only in luxury type vehicles with seating capacities of ten passengers or less, excluding the driver. 52 Pa.Code § 29.333(a). Camerlengo sought to operate a service with vehicles which seated up to 15 passengers, excluding the driver.

2. At the time of the ALJ's decision, § 41.14, entitled "Evidentiary Criteria Used to Decide Motor Common Carrier Applications–Statement of Policy," provided:
    a. An applicant seeking motor common carrier authority has a burden of demonstrating that approval of the application will serve a useful purpose, responsive to a public demand or need.
    b. An applicant seeking motor common carrier authority has the burden of demonstrating that it possesses the technical and financial ability to provide the proposed service, and, in addition, authority may be withheld if the record demonstrates that the applicant lacks a propensity to operate safely and legally.
    c. The Commission will grant common carrier authority commensurate with the demonstrated public need unless it is established that the entry of a new carrier into the field would endanger or impair the operations or existing common carriers to an extent that, on balance, the granting of authority would be contrary to public interest.
    52 Pa.Code § 41.14(a)-(c).

The PUC stated that pursuant to § 1103(a) of the Public Utility Code,[3] a certificate of public convenience shall be granted by order of the PUC only if the PUC finds or determines the granting of such certificate is necessary *or* proper for the service, accommodation, convenience, or safety of the public. The PUC also stated, at the time Camerlengo's application was pending before the ALJ, PUC regulation 52 Pa.Code § 41.14 required the applicant to show: (1) approval of the application will serve a useful public purpose, responsive to a public demand or need; and (2) it possesses the technical and financial ability to provide the proposed service. In addition, authority may be withheld if the record demonstrates the applicant lacks a propensity to operate safely and legally. 52 Pa.Code §§ 41.14(a), 41.14(b).

The PUC adopted a final policy statement March 22, 2001. The policy states that an applicant seeking authority to operate a limousine service need not demonstrate approval of the application would serve a useful public purpose, responsive to a public demand or need.[4] The final policy statement became

3. Section 1103 governs the procedure to obtain certificates of public convenience, and provides:
(A) GENERAL RULE—Every application for a certificate of public convenience shall be made to the commission in writing, be verified by oath or affirmation, and be in such form, and contain such information, as the commission may require by its regulations. A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. The commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable. In every case, the commission shall make a finding or determination in writing, stating whether or not its approval is granted. Any holder of a certificate of public convenience, exercising the authority conferred by such certificate, shall be deemed to have waived any and all objections to the terms and conditions of such certificate.
66 Pa.C.S. § 1103(a).

4. Pursuant to the March 22, 2001 final policy statement, 52 Pa.Code § 41.14 was amended, effective May 5, 2001, to include subsection (d), which provides:
(d) Subsections (a) and (c) do not apply to an applicant seeking authority to provide motor carrier of passenger service under §§ 29.331–29.335 (relating to limousine service).
52 Pa.Code § 41.14(d).

effective on the date of its publication, May 5, 2001. Pursuant to that statement, the PUC determined Camerlengo did not have to show a public necessity, but also stated the record established a public need for the proposed service. The PUC concluded Camerlengo was technically and financially able operate the service, and he had not shown a propensity to operate unsafely and illegally. *See* 52 Pa.Code § 41.14(b). Therefore, the PUC granted Camerlengo's exceptions and reversed the ALJ. The PUC also granted Camerlengo's request for waiver. Appellees appealed to the Commonwealth Court.

■ The Commonwealth Court reversed the PUC's decision, holding an applicant must prove public necessity to obtain a certificate of public convenience, and in this case, the applicant failed to do so. We granted review to consider whether the Commonwealth Court gave appropriate deference to the PUC's authority and discretion.

The PUC asserts the Commonwealth Court erred and abused its discretion in limiting its analysis to determining whether there was a public need for the proposed service. The Commonwealth Court opined the necessary or proper standard in 66 Pa.C.S. § 1103(a) required the applicant to prove public necessity for the proposed service. The court reasoned prior PUC policy required a showing of public necessity, and the fact that courts routinely affirmed the PUC's interpretation of its statutory mandate is binding upon the PUC; put simply, the PUC may not change its policy.

"Appellate review of a PUC order is limited to determining whether a constitutional violation, an error of law or a violation of PUC procedure has occurred and whether the necessary findings of fact are supported by substantial evidence." *Rohrbaugh v. Pa. PUC*, 556 Pa. 199, 727 A.2d 1080, 1084 (1999) (citing 2 Pa.C.S. § 704).

■ "[T]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature as expressed by the words employed." *Barasch v.*

*Pa. PUC,* 516 Pa. 142, 532 A.2d 325, 331 (1987) (citations omitted). Though deference to the PUC's discretionary interpretation does not preclude judicial review, courts may not disturb the commission's interpretation regarding a certificate of public convenience unless the result is clearly erroneous, arbitrary, and unsupported by substantial evidence. *See Peoples Natural Gas Co. v. Pa. PUC,* 523 Pa. 370, 567 A.2d 642, 644 (1989). When interpreting provisions of the Public Utility Code, and the language of the statute is clear and unambiguous, a court need go no further to discern the legislature's intent. *See City of Philadelphia v. Board of Finance and Revenue,* 569 Pa. 381, 803 A.2d 1262, 1267 (2002). Further, the plain words of the statute may not be ignored, and each word should be given effect. *See Barasch,* at 331. Clearly, the Commonwealth Court ignored the PUC's statutory mandate set out in § 1103(a) and instead substituted its discretion for that of the PUC when it concluded the applicant had to demonstrate public need. In doing so, the court focused only on the word "necessary" rather than on the phrase "necessary or proper." However, the conjunction "or" must be given its ordinarily disjunctive meaning unless such a construction would lead to an absurd result. *Forty Fort Borough v. Kozich,* 669 A.2d 469, 471 (Pa.Cmwlth.1995), *affirmed,* 701 A.2d 1009 (Pa.Cmwlth.1997).

Here, the Commonwealth Court deprives the PUC of its discretion and authority under § 1103(a). The Commonwealth Court relied on 52 Pa.Code § 41.14(a) to support its determination the record did not support a finding of public need. However, this regulation was amended prior to the PUC's decision, so as to reflect the change in policy, *i.e.,* now the applicant need not show public need for operating a limousine service.

This Court has long recognized the distinction in administrative agency law between the authority of a rule adopted pursuant to an agency's legislative rule-making power and the authority of a rule adopted pursuant to interpretive rule-making power. The former type of rule is the product of an exercise of legislative power by an administrative

agency, pursuant to a grant of legislative power by the legislative body, and is valid and is as binding upon a court as a statute if it is (a) within the granted power; (b) issued pursuant to proper procedure, and (c) reasonable. A court, in reviewing such a regulation, is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these have been exceeded in the field of action involved, it is not enough that the prescribed regulations shall appear to be unwise or burdensome or inferior to another regulatory scheme. Error or lack of wisdom in a ruling is not *per se* equivalent to abuse. A regulation must appear to be so entirely at odds with fundamental principles as to be the expression of a whim rather than an exercise of judgment.

*Rohrbaugh*, at 1085 (citations omitted). Thus, an agency may revise its policies and amend its regulations in interpreting its statutory mandates. Further, past interpretation of a statute, though approved by the judiciary, does not bind the PUC to that particular interpretation. *See also Seaboard Tank Lines v. PUC*, 93 Pa.Cmwlth. 601, 502 A.2d 762 (1985). In *Seaboard*, the Commonwealth Court affirmed the PUC's decision to eliminate the requirement that an applicant demonstrate inadequacy of existing service before a certificate of public convenience would be granted. The court stated:

The PUC's mandate with respect to the granting of certificates of public convenience is a broad one: "a certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." The legislature, however, provided no definition of specifically what the criteria were to be in determining the propriety of granting a certificate, leaving the formulation of such criteria to the PUC. It is true, as discussed above, that courts have consistently articulated the "inadequacy" requirement as an element of a utility's application for authority. Nevertheless, it is evident that the policy of the

> legislature pursuant to which the original criteria were established does not show an intention that expanded service be allowed only when existing service is inadequate. Rather, we believe that that policy consists of the more broad intention that utilities not be allowed to engage in unrestrained and destructive competition, which activity was thought to be, by its very nature, at odds with the public interest.

*Id.*, at 764–65 (citations omitted) (footnote omitted). Thus, the court acknowledged the PUC's prior interpretations of its statutory mandates are not binding upon it simply because those interpretations received judicial approval in the past. Of import to the court's reasoning was the fact the inadequacy requirement was not statutorily created, but a regulation. *Id.*, at 766–67.

Here, the changes in policy and regulation were made in consideration of the public interest. *See* 31 Pa.B. 2385 (Final Policy Statement on Evidentiary Criteria Used to Decide Motor Common Carrier Applications). The PUC acted in public interest by permitting competitive growth in an industry, which results in competitive pricing. *Id.* An applicant seeking to establish a luxury service would be hard pressed to show a "public need" for convenience. Allowing the applicant to meet a less stringent evidentiary burden makes expansion of the market possible. This situation falls squarely within the PUC's area of expertise and is best left to the commission's discretion. Accordingly, we reverse the Commonwealth Court.

Order reversed.